No. 19,342.

JOHN VAUGHN *v.* COLORADO WOOL MARKETING
ASSOCIATION.
(360 P. [2d] 438)

Decided March 13, 1961.

Mr. RALPH B. HARDEN, Mr. JOHN E. KOCHENBURGER, for plaintiff in error.

Messrs. NORTHCUTT & SECCOMBE, for defendant in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

Both plaintiff in error, defendant in the trial court, and defendant in error, plaintiff in trial court have requested this matter be finally determined upon the application for supersedeas and we have elected so to do.

The parties will be referred to as they appeared in the trial court.

Plaintiff is a nonprofit corporation, organized and existing under and by virtue of the laws of the State of Colorado, and of which defendant was a member wool grower.

The record discloses that on May 1, 1951, plaintiff and defendant entered into a marketing agreement for the sale of defendant's 1951 wool clip. Pursuant to such agreement, defendant's wool was delivered and possession thereof taken by plaintiff and an advance made to defendant in the sum of $298.48 on May 23, 1951.

The pertinent paragraphs of the marketing agreement are 1, 2, 3 and 9, as follows:

"1. The Grower hereby appoints the Association as the exclusive agent to sell all wool of the 1951 clip produced by or for the Grower or acquired by him as landlord or lessor and agrees to deliver all such wool at such time and place as the Association may direct, in good condition, dry, well tied, and honestly packed.

"2. The Association agrees to sell such wool together with wool received from other growers through the National Wool Marketing Corporation and the Grower agrees that the Association may utilize the services of said National Wool Marketing Corporation to carry out the said agency.

"3. The Grower hereby authorizes the National Wool Marketing Corporation to sell said wool in its own name and to collect the proceeds of the sales thereof. The Association and the National Wool Marketing Corporation are each of them hereby granted full power to borrow money on such wool for any purpose of the borrow-

ing corporation; may exercise all other rights of ownership without limitation and either may pledge for its own account or security for its own debts or otherwise all or any such wool documents representing the same, or claims arising therefrom. The said wool may be graded, classified or commingled with other similar wools of other growers if in the conclusive discretion of the Association or the National Wool Marketing Corporation it shall be deemed desirable to do so.

\* \* \*

"9. Regardless of any provisions of this agreement, the Grower shall be individually responsible to the Association for all of his overadvances which shall be payable at the Association's office in Denver, Colorado."

At the time defendant's wool was delivered by plaintiff to National Wool Marketing Corporation pursuant to said marketing agreement, the wool market had declined to such an extent that it was not advisable to sell in the open market, and accordingly defendant's wool was stored in a warehouse. Later the United States Congress created the Community Credit Corporation (hereafter referred to as C.C.C.) which administered the government price support program designed to furnish aid to the depressed wool producing industry. Pursuant to this Act of Congress a loan was thereafter secured on defendant's wool from said C.C.C. by National Wool Marketing Corporation, with the warehouse receipts held by National Wool Marketing Corporation being pledged to said C.C.C. as security for the payment of such loan.

Upon default in payment by the National Wool Marketing Corporation, pursuant to the terms of the note, the security was taken by C.C.C. which upon foreclosure sale brought $143.33 less than the amount theretofore advanced by plaintiff to defendant. Under the circumstances the default was an "intentional" default necessitated by the fact that the government loan was greater than the wool would bring on the open market.

The evidence further discloses that defendant also

consigned his 1952 wool clip to plaintiff, and in like fashion a loan was again obtained from C.C.C. on this wool. Also an advance was again made to this defendant. However, a part of this clip was redeemed and sold on the open market, resulting in a credit for defendant of $15.47, i.e. instead of an *over*advance there was an *under*advance for 1952. Plaintiff credited this amount of $15.47 against the overadvance of $143.33 made in the preceding year, leaving the sum of $127.86 still due and owing the plaintiff, and for which plaintiff had judgment.

Defendant's theory both in the trial court and here, is that the marketing agreement between the plaintiff and defendant only authorized plaintiff to "sell" defendant's wool and that said agreement did not authorize plaintiff acting through the National Wool Marketing Association to pledge the wool to the C.C.C. and to thereafter permit the latter to foreclose on the security when the National Wool Marketing Association failed to redeem the wool. Having breached the marketing agreement, argues defendant, plaintiff cannot recover for any overadvance.

The trial court held that there was a "sale" within the meaning of the word as defined in the marketing agreement and there being no breach of this agreement by plaintiff it was entitled to recover the overadvance from defendant. Defendant seeks reversal of that judgment.

█ Perusal of the marketing agreement between plaintiff and defendant reveals that defendant granted very broad powers to plaintiff and National Wool Marketing Association to the end that not only could plaintiff and National Wool Marketing Association "sell" defendant's wool, but were also granted "full power by defendant to borrow money on such wool for any purpose of the borrowing corporation; may exercise all other rights of ownership without limitation and either may pledge for its own account or as security for its own

debts, or otherwise, all or any such wool documents representing the same, or claims arising therefrom." It is obvious that under this agreement the plaintiff and National Wool Marketing Association as long as they acted in good faith could for all practical purposes treat defendant's wool as their own, doing with it as they pleased, subject only to the obligation to account to defendant for all money received upon sale of the wool. The defendant concedes that plaintiff and the National Wool Marketing Association acted at all times in good faith and that quite probably placing his wool in the C.C.C. was the best marketing procedure, but contends that in so doing plaintiff acted beyond its authority and in violation of the marketing agreement. Under the facts and circumstances present the trial court was correct in ruling that the transaction was a "sale" within the meaning of that word as used in the marketing agreement.

Defendant also assigns as error the ruling of the trial court denying his offer of exhibit No. 4, a blank form upon which authority is granted to place wool under loan to C.C.C. Upon trial the secretary-treasurer of plaintiff association testified on cross-examination that defendant gave the required written designation specifically authorizing plaintiff to put the wool under the government's loan program. Such a designation was not produced, counsel for plaintiff stating that plaintiff was relying on the marketing agreement and the designation was not a part of their prima facie case. Defendant declared that it was not a part of his defense, so did not demand that it be produced, though the secretary-treasurer indicated the actual designation signed by defendant was probably in the association office. Thereafter, as a part of his case defendant recalled plaintiff's secretary-treasurer for additional cross-examination and submitted exhibit No. 4 to him and inquired whether it was the form of designation allegedly signed by defendant. The secretary-treasurer testified that such was the type

or form of designation, whereupon defendant offered the exhibit in evidence. Prior to such cross-examination defendant had categorically denied that he had ever signed a form of designation authorizing his wool to be pledged to the C.C.C. In this state of the record the trial court declined to admit the exhibit in evidence. We perceive no error. This proffered document was not relied on by plaintiff in support of its claim, nor by the defendant in his defense, he having testified he had never signed such a form. Under such circumstances the document was completely immaterial.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.