Cheryl A. KENDRICK, Petitioner

v.

Holly L. PIPPIN, Respondent.

No. 09SC781.

Supreme Court of Colorado,
En Banc.

May 9, 2011.

Law Office of Robert A. Garcin, Robert A. Garcin, Loveland, Colorado, Attorneys for Petitioner.

The Ukasick Law Firm, Troy A. Ukasick, Loveland, Colorado, Attorneys for Respondent.

Patterson, Nuss & Seymour, P.C., Franklin D. Patterson, Brian D. Kennedy, Greenwood Village, Colorado, Attorneys for Amicus Curiae Colorado Defense Lawyers Association.

Schoenwald & Thompson LLC, Julia T. Thompson, Denver, Colorado, Ogborn, Summerlin & Ogborn LLC, Thomas D. Neville, Denver, Colorado, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Chief Justice BENDER delivered the Opinion of the Court.

## I. Introduction

This case arises out of an automobile accident that occurred in winter driving conditions. At trial, a jury found that the defendant, Holly Pippin, was not negligent in causing the accident in which her vehicle struck that of the plaintiff, Cheryl Kendrick. Kendrick appealed to the court of appeals, asserting that three decisions by the trial court were in error: (1) the decision to instruct the jury on the doctrine of sudden emergency; (2) the decision to reject Kendrick's proposed jury instruction on the doctrine of res ipsa loquitur; and (3) the decision to deny Kendrick's motion for a new trial based on an allegation of juror misconduct. *Kendrick v. Pippin*, 222 P.3d 380, 383 (Colo.App.2009). The court of appeals affirmed the trial court on all three grounds. *Id.* at 384–89.

Upon review, we reverse the court of appeals' opinion. While we agree with the court of appeals' decision to affirm the trial court on the issues of res ipsa loquitur and juror misconduct, we hold that the trial court erred by instructing the jury on the doctrine of sudden emergency.

As to the issue of sudden emergency, our law requires a trial court to instruct a jury on the doctrine of sudden emergency when the party seeking that instruction presents competent evidence that the party was confronted with a sudden or unexpected occurrence not of the party's own making. However, a party is not entitled to a sudden emergency instruction if the party fails to present sufficient evidence that the party was confronted with a sudden or unexpected occurrence. Reviewing the record in this case, we find that Pippin's testimony shows that she anticipated that the roads would likely be slick and icy. We therefore conclude that Pippin failed to present competent evidence that she was confronted with sudden or unexpected road conditions. Hence, we hold that the trial court erred when it instructed the jury on the sudden emergency doctrine and reverse the court of appeals on this issue.

As to the second issue, we find that the trial court properly rejected Kendrick's proposed jury instruction on the doctrine of res ipsa loquitur. Our law requires a trial court to instruct the jury on the doctrine of res ipsa loquitur if a plaintiff establishes by a preponderance of the evidence the following three elements: (1) the event is of the kind that ordinarily does not occur in the absence of negligence; (2) responsible causes other than the defendant's negligence are sufficiently eliminated; and (3) the presumed negligence is within the scope of the defendant's duty to the plaintiff. Reviewing the record, we find that Kendrick failed to introduce sufficient evidence to establish the first element of this doctrine. Therefore, we conclude that Kendrick was not entitled to an instruction on res ipsa loquitur.

We also agree with the court of appeals' opinion on the issue of juror misconduct. We conclude that jurors may use their background, including professional and educational experiences, to inform their deliberations so long as they do not introduce legal content or specific factual information learned from outside the record. We hold that, because the juror in this case simply applied her professional experience and her knowledge of mathematics to the evidence admitted at trial, the trial court properly concluded that the jury was not exposed to extraneous prejudicial information.

Consequently, we reverse the judgment of the court of appeals and remand the case to that court to return the case to the trial court for a new trial.

## II. Facts and Proceedings Below

The accident occurred on the morning of February 10, 2006, at the intersection of Highway 287 (North Garfield Street) and 37th Street in Loveland. For several hours the night before, it had snowed or drizzled, and snow covered the roads.

Kendrick was stopped at a red light in the eastbound left turn lane of 37th Street. Pippin was driving southbound on Highway 287. Highway 287 consists of four southbound lanes of traffic: the center two lanes are through lanes; the far right lane is a right-turn-only lane; and the far left lane is a left-

turn-only lane. Pippin drove in the right through lane, next to the right-turn-only lane. As she approached the intersection with 37th Street, the traffic light turned from green to yellow, and Pippin applied her brakes. When she applied the brakes, Pippin's vehicle began to slide, and she realized that she could not stop her vehicle. To avoid a collision with cars that might begin entering the intersection from 37th Street, Pippin attempted to make an illegal right turn from her lane onto westbound 37th Street instead of continuing in her lane through the intersection. Continuing to slide, Pippin could not complete the turn onto 37th Street, and her vehicle went over the center median, struck a traffic sign, and impacted Kendrick's vehicle, coming to rest against Kendrick's driver's side door.

Kendrick sued Pippin for negligence. At trial, the parties disputed whether the icy conditions at the intersection were unexpected. Pippin testified that she had experience driving in winter conditions, that she knew that it had been drizzling the night before, and that, because of this, she drove in four wheel drive and at forty miles per hour, below the posted speed limit of forty-five. She stated that, prior to reaching the intersection, the roads were not dry but "pretty clear" and that she had driven about four miles and through seven or eight intersections without sliding or losing control of her vehicle.

Contesting Pippin's assertion that the icy conditions at the intersection were unexpected, Kendrick presented testimony from the responding police officer, Officer Roberts, and from her employer, Steven Hendrickson. Officer Roberts testified that, due to the overnight snowfall, the road conditions in the area were generally slushy and icy and that the road conditions at the intersection were not unexpected but that "[t]he conditions were pretty much the same everywhere." He stated that the intersection was "an average intersection, given the conditions of the snowfall" and that he was not aware of any other accidents at the intersection prior to the parties' collision. Hendrickson supported Officer Roberts's testimony, stating that he drove on the same road as Pippin

that morning, that the roads were covered with "an inch or two" of snow, that the roads "were slick if you drove too fast," and that he encountered no unusual or unexpected patch of ice on the roadway.

Because Pippin contended that she was surprised by the icy conditions at the intersection, she requested the trial court instruct the jury on the sudden emergency doctrine. The trial court approved the instruction and gave the jury the following sudden emergency instruction: "A person who, through no fault of his or her own, is placed in a sudden emergency, is not chargeable with negligence if the person exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances."

Kendrick sought to instruct the jury on the doctrine of res ipsa loquitur and submitted the following proposed instruction, derived from CJI–Civ. 4th 11:12 (2008), to the trial court:

"Presumptions" are legal rules based upon experience or public policy and established in the law to help the jury decide the case. When the driver of a motor vehicle hits another which is stopped, the law presumes that the driver was negligent.

The trial court rejected the proposed instruction, reasoning that "[t]his fact situation here has no basis, neither in statute [n]or common law which has created a presumption" of negligence.

The jury found that Kendrick incurred injuries, damages, or losses, but that Pippin was not negligent. Kendrick filed a motion for a new trial based on allegations that, during deliberations, the jury foreperson, a licensed engineer, performed calculations regarding Pippin's speed, distance, and reaction time which she shared with the other jurors. In support of the motion, Kendrick offered an affidavit from a jury consultant whom Kendrick had retained to interview the jurors following the verdict. The affidavit stated: (1) the foreperson had informed the other jurors that she was an engineer; (2) the foreperson had provided the consultant with the calculations, but the consultant had not written them down; (3) the foreperson had concluded that Pippin did not have

enough time to avoid the collision; and (4) one juror said that the jurors had found the foreperson's calculations helpful. The trial court denied the motion for a new trial, declining to hold a hearing.

Kendrick appealed to the court of appeals, asserting that three decisions by the trial court were in error: (1) the decision to instruct the jury on the doctrine of sudden emergency; (2) the decision to reject Kendrick's proposed jury instruction on the doctrine of res ipsa loquitur; and (3) the decision to deny Kendrick's motion for a new trial based on an allegation of juror misconduct. *Kendrick*, 222 P.3d at 383.

The court of appeals affirmed the trial court on all three grounds. *Id.* at 384–89. First, the court of appeals held that Pippin's testimony regarding road conditions was sufficient to support the sudden emergency instruction. *Id.* at 384. Second, the court of appeals held that the trial court properly rejected Kendrick's proposed instruction on res ipsa loquitur, reasoning both that: (1) the circumstances of this case are factually distinguishable from previous cases finding a res ipsa loquitur instruction was appropriate; and (2) Kendrick failed to present evidence that "sufficiently eliminate[d] the possibility that the collision was caused by factors other than Ms. Pippin's negligence." *Id.* at 385. Finally, the court of appeals held that the actions of the jury foreperson did not constitute juror misconduct because the affidavit by the jury consultant did not demonstrate that extraneous prejudicial information was before the jury. *Id.* at 388–89.

Kendrick petitioned this court, and we granted certiorari.[1]

### III. Analysis

Kendrick raises three issues for review: (1) whether the trial court erred when it

instructed the jury on the doctrine of sudden emergency; (2) whether the trial court erred when it rejected Kendrick's proposed instruction on the doctrine of res ipsa loquitur; and (3) whether juror misconduct occurred when the jury foreperson made her own calculations estimating Pippin's speed, distance, and reaction time and shared those calculations with the others jurors. We address each issue in turn.

### A. Sudden Emergency Doctrine

■ We begin by considering whether the trial court erred when it gave the jury the following instruction on the doctrine of sudden emergency: "A person who, through no fault of his or her own, is placed in a sudden emergency, is not chargeable with negligence if the person exercises that degree of care which a reasonably careful person would have exercised under the same or similar circumstances."

Supporting her assertion that the trial court erred when it instructed the jury on sudden emergency, Kendrick makes two arguments. First, Kendrick contends that a driver who loses control of her vehicle in winter driving conditions is not entitled to a sudden emergency jury instruction because adverse road conditions during the winter, after a snowfall are not unexpected. Second, Kendrick argues that the sudden emergency doctrine does not apply where the tortious conduct of the party seeking the instruction created the emergency situation and that, in this case, Pippin failed to exercise due care while driving in winter conditions, creating the emergency situation.

Supporting the court of appeals' opinion, Pippin contends that, because she presented competent evidence that she was confronted with an emergency situation not caused by her own negligence, the trial court correctly

1. We granted certiorari on the following three issues:

1. Whether the court of appeals erred in holding that a driver who loses control of a vehicle in winter driving conditions and collides with a vehicle stopped at a traffic light is entitled to a sudden emergency jury instruction.
2. Whether the court of appeals erred in concluding that a plaintiff is not entitled to an

instruction based on res ipsa loquitur when the defendant loses control of her vehicle during winter driving conditions and collides with the plaintiff.
3. Whether the court of appeals erred in concluding that jury misconduct did not occur when a member of the jury made her own calculations regarding vehicle accident reaction time and shared the calculations with the other members of the jury.

decided to instruct the jury on the sudden emergency doctrine.

Upon review, we agree with Kendrick and, accordingly, reverse the court of appeals on this issue. Because Pippin's testimony shows that she anticipated that the roads would likely be slick and icy, we conclude that Pippin failed to present competent evidence that she was confronted with sudden or unexpected road conditions, thereby entitling her to an instruction on sudden emergency. Therefore, we hold that the trial court erred when it instructed the jury on the sudden emergency doctrine.

An appellate court reviews a trial court's decision to give a particular jury instruction for abuse of discretion. *Fishman v. Kotts,* 179 P.3d 232, 235 (Colo.App.2007) (citing *Garcia v. Wal–Mart Stores, Inc.,* 209 F.3d 1170, 1173 (10th Cir.2000) and *Woznicki v. Musick,* 119 P.3d 567, 573 (Colo.App. 2005)). A trial court necessarily abuses its discretion if it bases its ruling on "an erroneous view of the law" or a "clearly erroneous assessment of the evidence." *People v. Wadle,* 97 P.3d 932, 936 (Colo.2004).

The sudden emergency doctrine recognizes that "a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal conditions." *Young v. Clark,* 814 P.2d 364, 365 (Colo.1991). The doctrine does not "impose a lesser standard of care on a person caught in an emergency situation; the individual is still expected to respond to the situation as a reasonably prudent person under the circumstances." *Id.* Rather, once instructed on the doctrine, the jury takes into account the emergency when determining whether the party's conduct was reasonable. *Id.* If the jury determines that the party's actions were unreasonable despite the emergency, the jury may find the party negligent. *Id.*

Where a party presents "competent evidence ... that [she] was confronted with a sudden or unexpected occurrence not of the party's own making," the law entitles that party to a sudden emergency instruction. *Id.* at 369. "An instruction should not be

given to the jury unless there is evidence introduced to support that instruction." *Id.* at 367. While the trial court decides whether to instruct the jury on sudden emergency, the jury determines, as questions of fact, whether there was an emergency, whether the emergency arose because of the party's own negligence, and whether the party's conduct was reasonable under the circumstances. *Id.* at 366–67; *Hesse v. McClintic,* 176 P.3d 759, 764 (Colo.2008).

We have found that a party presented sufficient evidence that she was confronted with a sudden or unexpected occurrence in cases where the party experienced sudden, unexpected brake failure, *e.g., Cudney v. Moore,* 163 Colo. 30, 31, 428 P.2d 81, 82 (1967); where another driver without warning swerved into the party's lane of traffic, e.g., *Young,* 814 P.2d at 367; and, in one case, where both parties unexpectedly encountered a patch of ice on a curve of a mountainous road that was completely dry until that point, *Stewart v. Stout,* 143 Colo. 70, 72, 351 P.2d 847, 848 (1960). In each of these cases, the party was confronted with an unanticipated and unforeseeable occurrence calling for immediate action. *Cf. Piper v. Mayer,* 145 Colo. 391, 396, 360 P.2d 433, 435 (1961) (holding that an instruction on unavoidable accident was improper because "the instant case does not have in it the factor of an unforeseeable and uncontrollable happening").

In *Young,* the defendant claimed she was confronted with a sudden emergency when another driver abruptly swerved into her lane of traffic, forcing all the cars behind that driver to suddenly stop. 814 P.2d at 367. Opposing the trial court's instruction on sudden emergency, the plaintiff argued, in part, that the doctrine was not applicable because "the sudden emergency confronting [the defendant] arose from a common, and thus foreseeable, traffic problem." *Id.* at 366. Rejecting this argument, this court reasoned that the evidence showed that the circumstances encountered by the driver were "sudden and unexpected" and, thus, constituted "sufficient evidence to support giving the sudden emergency instruction." *Id.* at 367 (citing Restatement (Second) of Torts

§ 296(1) cmt. a (1977) (reciting that the sudden emergency doctrine applies "where it is created by the unexpected operation of a natural force or by the innocent or wrongful act of a third person")).

Here, ruling on Pippin's proposed instruction, the trial court stated that giving a sudden emergency instruction was justified because "there is competent evidence here of differences of opinion, differing testimony" regarding the road conditions that morning and, therefore, whether there was a sudden emergency and whether the defendant's negligence created that emergency were "fact question[s] for the jury."

However, we find that the record evidence fails to support the trial court's conclusion that Pippin presented competent evidence that the icy intersection was a sudden, unexpected event. Rather, we conclude that Pippin failed to present competent evidence that she was confronted with a sudden or unexpected occurrence because Pippin's trial testimony showed that she anticipated that the roads and intersections would likely be icy that morning and, therefore, encountering ice at the intersection was not sudden or unexpected.

At trial, opposing counsel asked Pippin whether she was "aware that morning that there had been ice and slush on the roadways," and Pippin responded, "I knew that it had been drizzling the night before, yes." Moreover, Pippin testified that the morning of the accident she drove her car in four wheel drive "because I knew that it had been drizzling the night before[, a]nd I wanted to make sure if there was any ice that I could take off and not slip from any intersections." She also testified that she drove five miles per hour below the posted speed limit because of the degraded road conditions. Finally, Pippin testified that the roads she encountered before reaching the intersection "appeared wet" but were "pretty clear" and "didn't feel as slick as that particular intersection because I hadn't had any problems up to that point."

Given Pippin's testimony, the circumstances in this case are distinguishable from those in the cases discussed above, *Young*, 814 P.2d at 367, *Cudney*, 163 Colo. at 31, 428

P.2d at 82, and *Stewart*, 143 Colo. at 72, 351 P.2d at 848. In each of those cases, the driver was confronted with an emergency of the kind which all drivers possess a general awareness that they could confront on any given day—erratic drivers, unanticipated mechanical failure, and an unforeseeable change in road conditions. Instead, Pippin's testimony demonstrates both that she specifically expected icy roads and intersections that morning and that she modified her driving in anticipation of encountering slick and icy conditions. Having so testified, the evidence does not support Pippin's claim that encountering ice at the intersection of Highway 287 and 37th Street was a sudden or unexpected occurrence, which can serve as the basis of a sudden emergency instruction.

Because Pippin's testimony shows that she anticipated that the roads would likely be slick and icy, we conclude that Pippin failed to present competent evidence that she was confronted with sudden or unexpected road conditions, thereby entitling her to an instruction on sudden emergency. Therefore, we hold that the trial court erred when it instructed the jury on the sudden emergency doctrine and, consequently, reverse the court of appeals on this issue.

## B. Res Ipsa Loquitur

■ We next consider whether the trial court erred in failing to instruct the jury on the doctrine of res ipsa loquitur. Kendrick argues that the trial court erred when it rejected her proposed instruction on the doctrine of res ipsa loquitur because the circumstantial evidence presented at trial established that it was more likely than not that the defendant's negligence caused the accident. Supporting the court of appeals, Pippin makes two arguments. First, Pippin contends that the doctrine of res ipsa loquitur applies only to automobile accidents involving certain types of rear-end collisions. Second, she asserts that Kendrick failed to present evidence that sufficiently eliminated the possibility that factors other than Pippin's negligence caused the collision.

Upon review, we agree with the court of appeals but for different reasons. We find

that Kendrick failed to introduce sufficient evidence to establish the first element of the res ipsa loquitur doctrine, and, therefore, we conclude that Kendrick was not entitled to an instruction on the doctrine.

An appellate court reviews for abuse of discretion a trial court's decision not to give a particular jury instruction. *People v. Barnum,* 217 P.3d 908, 910 (Colo.App.2009) (citing *People v. Renfro,* 117 P.3d 43, 48 (Colo. App.2004)). A trial court necessarily abuses its discretion if it bases its ruling on "an erroneous view of the law" or a "clearly erroneous assessment of the evidence." *Wadle,* 97 P.3d at 936.

■■ Res ipsa loquitur (meaning "the thing speaks for itself") is a rule of evidence that establishes a rebuttable presumption that the defendant was negligent. *Stone's Farm Supply, Inc. v. Deacon,* 805 P.2d 1109, 1114 (Colo.1991). Whether res ipsa loquitur is applicable is a question of law for the trial court. *Minto v. Sprague,* 124 P.3d 881, 886 (Colo.App.2005); *Zimmer v. Celebrities, Inc.,* 44 Colo.App. 515, 517, 615 P.2d 76, 78 (1980) (citing *McGee v. Heim,* 146 Colo. 533, 538, 362 P.2d 193, 196 (1961)).

■■ When a plaintiff introduces sufficient evidence to establish a presumption of negligence, the trial court must instruct the jury on the doctrine. *Ravin v. Gambrell,* 788 P.2d 817, 822 (Colo.1990). Once the trial court rules that res ipsa loquitur applies, the jury must then compare any evidence of the plaintiff's negligence with the inferred negligence of the defendant and decide what percentage of fault is attributable to each party. *Bettner v. Boring,* 764 P.2d 829, 834 n. 4 (Colo.1988) (citing *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66, 70 (Colo.1980)).

■ To demonstrate that the doctrine is applicable, a plaintiff must introduce evidence which, when viewed in the light most favorable to the plaintiff, establishes each of three elements as being more probable than not: (1) the event is of the kind that ordinarily does not occur in the absence of negligence; (2) responsible causes other than the defendant's negligence are sufficiently eliminated; and (3) the presumed negligence is

within the scope of the defendant's duty to the plaintiff. *Ravin,* 788 P.2d at 822.

In cases involving automobile accidents, courts have most often applied the doctrine in cases where the defendant drove on the wrong side of the road or hit the other vehicle in the rear. *See* CJI–Civ. 4th 11:10, 11:12 (2008). Although application of the doctrine is not strictly limited to these situations, *see Eddy v. McAninch,* 141 Colo. 223, 230, 347 P.2d 499, 503–04 (1959) (holding that the res ipsa loquitur doctrine was applicable where the defendant's brakes failed, causing him to run a red light and broadside another vehicle), this court has instructed that "[i]t is not recommended that this theory of recovery be employed except where the facts come strictly within the pattern of the typical rear-end collision situation." *Bettner,* 764 P.2d at 835.

■■ The first requirement for the application of res ipsa loquitur, that the event is of the kind that ordinarily does not occur in the absence of negligence, "is a basis of past experience which reasonably permits the conclusion that such events do not ordinarily occur unless someone has been negligent." Restatement (Second) of Torts § 328D cmt. c (1965). The mere happening of an accident fails to give rise to the presumption of negligence. *Nat'l Const. Co. v. Holt,* 137 Colo. 208, 211, 322 P.2d 1046, 1048 (1958). Thus, where it is "common human experience that such events all too frequently occur without such negligence," instruction on res ipsa loquitur is not appropriate. Restatement (Second) of Torts § 328D cmt. c.

Concerning the application of this requirement to automobile accidents, most states have held that the mere fact that a vehicle skids or slides on a slippery highway does not in itself constitute evidence of negligence. *See, e.g., Miller v. Brazel,* 300 F.2d 283, 287–88 (10th Cir.1962); *Wilson v. Rushton,* 199 Kan. 659, 433 P.2d 444, 449 (1967). Indeed, this court has stated, "[s]uch a mishap as a defendant's automobile merely skidding or sliding into collision with a plaintiff's vehicle on the highway (so the courts hold) may as readily be caused by circumstances beyond defendant's control as by his negligence." *Bettner,* 764 P.2d at 834 (citation omitted).

However, a court may apply the doctrine in cases involving a skidding or sliding vehicle where the additional circumstances surrounding the accident provide evidence giving rise to a presumption of negligence on the part of the driver of the skidding vehicle. *Wilson*, 433 P.2d at 449 (citing 8 Am.Jur.2d, *Automobiles* § 1142); *accord Vespe v. DiMarco*, 43 N.J. 430, 204 A.2d 874, 877 (1964) (concluding that the circumstances attending the skidding of the defendant's car on an icy road justified the presumption that the accident occurred due to the defendant's lack of due care); *Jacobson v. Coady*, 77 S.D. 1, 84 N.W.2d 1, 2 (1957) (stating that the appropriate inquiry in cases involving skidding is the "driver's conduct previous to such skidding" such as the "speed of the automobile prior to the skidding and the care in handling the automobile, particularly in the application of brakes").

 To satisfy the second element of the res ipsa loquitur doctrine—that responsible causes other than the defendant's negligence are sufficiently eliminated—the plaintiff must produce evidence which, when viewed in a light most favorable to the plaintiff, establishes that the defendant's negligence was the more probable explanation for the accident. *Ravin*, 788 P.2d at 822. A plaintiff does not need to eliminate every possible cause other than the defendant's negligence. *Id.* However, if, given the evidence presented, the trial court concludes that at best it is equally likely that something other than the defendant's negligence caused the plaintiff's injuries, the trial court must refuse to instruct the jury on the doctrine. *McGee*, 146 Colo. at 538, 362 P.2d at 196; *see also Holmes v. Gamble*, 655 P.2d 405, 409 (Colo. 1982).

 The third requirement—that the presumed negligence is within the scope of the defendant's duty to the plaintiff—is easily satisfied in most cases involving automobile accidents. All drivers owe a duty to

drive with reasonable care under the circumstances. *Hesse*, 176 P.3d at 762.

Here, Kendrick proposed the following jury instruction on res ipsa loquitur: " 'Presumptions' are legal rules based upon experience or public policy and established in the law to help the jury decide the case. When a driver of a motor vehicle hits another which is stopped, the law presumes that the driver was negligent."

Reviewing the record, we conclude that Kendrick failed to establish, by a preponderance of the evidence, that the accident that occurred in this case is of the kind that ordinarily does not occur in the absence of negligence. Because we decide that Kendrick failed to establish this element, we conclude that Kendrick was not entitled to an instruction on res ipsa loquitur and, therefore, do not need to address the remaining two elements of the doctrine.

Addressing whether this accident is of the kind that ordinarily does not occur in the absence of negligence, we conclude that Kendrick failed to present sufficient evidence to satisfy this element. The mere happening of an accident fails to raise a presumption of negligence. Although it is undisputed that Pippin's vehicle slid at the icy intersection and collided with Kendrick's vehicle, that fact is not in itself enough to constitute evidence of negligence or demonstrate that this is the kind of accident that does not occur unless someone has been negligent. Moreover, the additional circumstances surrounding the accident fail to give rise to a presumption of negligence. Pippin testified that as she approached the intersection she drove in four wheel drive and at five miles per hour below the posted speed limit. While other witnesses testified that the roads were icy everywhere, and, prior to the accident, no other cars had difficulty navigating the intersection, this does not, in itself provide sufficient evidence to give rise to a presumption that Pippin drove negligently.[2] Rather, it shows

---

2. Similarly, the fact that Pippin chose to make an illegal turn from her lane onto 37th Street instead of going through the intersection fails to give rise to an inference that Pippin drove negligently. From the facts presented at trial, a jury could reasonably decide that this was the more

prudent decision, given that traffic would soon be entering the intersection from 37th Street. Thus, this fact does not give rise to a inference of negligence but, rather, creates a question for the jury, just as the question of whether traveling five miles per hour below the speed limit was reason-

only that Pippin's vehicle slid on an icy road, which may as readily be caused by circumstances beyond Pippin's control as by her negligence.

Because we conclude that Kendrick failed to introduce sufficient evidence to establish a presumption of negligence, we conclude that the trial court properly decided not to give Kendrick's proposed instruction on the doctrine of res ipsa loquitur.

### C. Juror Misconduct

■ Finally, we consider whether juror misconduct occurred when the jury foreperson made her own calculations estimating Pippin's speed, distance, and reaction time and shared those calculations with the other jurors. Kendrick contends that, by sharing her calculations with the other jurors, the jury foreperson exposed the jury to extraneous prejudicial information and, therefore, the trial court should have ordered an evidentiary hearing on the allegations of juror misconduct. Supporting the court of appeals' decision, Pippin asserts that the foreperson did not introduce extraneous prejudicial information but, rather, applied her generally applicable, preexisting knowledge to the evidence admitted at trial.

Upon review, we agree with the court of appeals. First we set forth our law governing juror misconduct, focusing specifically on Colorado Rule of Evidence 606(b) and its exception for extraneous prejudicial information. Recognizing that our current precedent does not address whether jurors may use their professional and educational experiences to assist their deliberations, we conclude that a juror's statements based on such experiences do not constitute extraneous prejudicial information. Jurors may use their background, including professional and educational experiences, to inform their deliberations so long as they do not introduce legal content or specific factual information learned from outside the record. We hold that, because the juror in this case simply applied her professional experience and her knowledge of mathematics to the evidence admitted at trial, the trial court properly decided that Kendrick's affidavit did not

demonstrate that the jury was exposed to extraneous prejudicial information and, therefore, properly denied her motion for a new trial without ordering an evidentiary hearing.

■ When a party seeks to impeach a verdict based on an allegation of juror misconduct, the party has a limited right to an evidentiary hearing on those allegations. Our law "strongly disfavors any juror testimony impeaching a verdict" but, rather, seeks to "promote finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion." *People v. Harlan*, 109 P.3d 616, 624 (Colo.2005). This policy is codified in CRE 606(b), which prohibits a juror from testifying or a court from receiving an "affidavit or evidence of any statement by [a] juror" about any "matter or statement occurring during the course of the jury's deliberations" or about "the effect of anything upon his or any other juror's mind or emotions." The rule allows juror testimony regarding a verdict only in three limited situations, to determine whether: (1) extraneous prejudicial information was improperly brought to the jurors' attention; (2) any outside influence was improperly brought to bear upon any juror; or (3) there was a mistake in entering the verdict onto the verdict form. *Id.*

■ Of the three exceptions to CRE 606(b), Kendrick alleges only that extraneous prejudicial information was improperly before the jury. For a court to set aside a verdict on the basis of this type of juror misconduct, a party must show both that extraneous information was improperly before the jury and that the extraneous information posed the reasonable possibility of prejudice to the defendant. *Harlan*, 109 P.3d at 624 (citing *Wiser v. People*, 732 P.2d 1139, 1143 (Colo.1987) and *Wadle*, 97 P.3d at 934–35). A trial court may hold a hearing to decide whether there is a reasonable possibility that the misconduct affected the jury's verdict. *Wiser*, 732 P.2d at 1143. However, in order to satisfy CRE 606(b), before granting a hearing the court must first conclude that the party alleging misconduct has pre-

able under the circumstances or was too fast for

the conditions is one for the jury.

sented competent evidence that extraneous prejudicial information was before the jury. *See Harlan,* 109 P.3d at 624 (stating that the first step in the two-part inquiry requires a court to determine whether extraneous prejudicial information was improperly before the jury); *see also Brooks v. Zahn,* 170 Ariz. 545, 826 P.2d 1171, 1177 (App.1991) ("In determining whether juror testimony is admissible to impeach the verdict, however, our first task is to determine whether the … information that [the juror] imparted to her fellow jurors constitutes extraneous information. If not, we need inquire no further."). Whether extraneous prejudicial information was before the jury presents a mixed question of law and fact. *Harlan,* 109 P.3d at 624. We apply an abuse of discretion standard to the court's findings of fact, but we review the court's conclusions of law de novo. *Id.*

In previous cases, we considered what constitutes extraneous prejudicial information. We have instructed that "jurors are required to consider only the evidence admitted at trial and the law as given in the trial court's instructions" and, therefore, "any information that is not properly received into evidence or included in the court's instructions is extraneous to the case and improper for juror consideration." *Harlan,* 109 P.3d at 624 (citing *Wadle,* 97 P.3d at 935 and *Wiser,* 732 P.2d at 1141, 1143). Applying this instruction, we have held that legal content and specific factual information learned from outside the record and relevant to the issues in a case constitute extraneous prejudicial information improperly before a jury. *Id.* at 625.

For instance, in *Harlan,* we held it improper for jurors to consult a Bible for passages related to the death penalty. *Id.* at 629. We reasoned that the passages constituted extraneous prejudicial information because "[t]he trial court had not admitted these materials into evidence, nor did the court's instructions allow their use." *Id.* Similarly, in *Wiser,* we held it improper for a juror to consult a dictionary for a definition of "burglary" because "[j]urors are required to follow only the law as it is given in the court's instructions." 732 P.2d at 1141; *see also Wadle,* 97 P.3d at 937 (stating that it

was indisputable that the jury's use of an internet description of an anti-depressant drug not admitted into evidence was improper); *Butters v. Wann,* 147 Colo. 352, 357, 363 P.2d 494, 497 (1961) (holding it was misconduct for a juror to conduct an independent investigation of the deceased's drinking habits and driver's license revocation).

■ While our prior decisions make clear that jurors may not consider legal content and specific factual information relevant to the case if they obtained that information outside of the judicial proceeding, this court has not considered whether jurors may use their own professional and educational experiences to inform their deliberations. The broader proposition that jurors may apply their general knowledge and everyday experience when deciding cases is generally undisputed. *See Harlan,* 109 P.3d at 636 (Rice, J., dissenting) (noting that "the concept of 'extraneous information' does not include the general knowledge a juror brings to court"); *Destination Travel, Inc. v. McElhanon,* 799 P.2d 454, 456 (Colo.App.1990) (stating that "[j]urors are permitted to use their common knowledge and observations in life in deciding cases"); *accord People v. Maragh,* 94 N.Y.2d 569, 708 N.Y.S.2d 44, 729 N.E.2d 701, 704 (2000) (stating that jurors' application of their "everyday experience[s]" never constitutes misconduct because "that is precisely what peer jurors are instructed and expected to use in their assessment of evidence"); *Brooks,* 826 P.2d at 1177 ("We expect jurors to draw upon their common sense and experience and use their knowledge to assist in reaching a verdict.").

Of the jurisdictions that have considered the particular issue of whether jurors may use their professional and educational expertise to inform their deliberations, courts have split over the issue. A minority of courts prohibit jurors from applying their specialized knowledge to deliberations and view a juror's professional or educational expertise as extraneous prejudicial information. Representative of this approach is *Maragh,* 708 N.Y.S.2d 44, 729 N.E.2d at 704–05. In *Maragh,* the New York Court of Appeals held that it was misconduct for two nurses to apply their professional knowledge to the

evidence presented at trial to reach "personal specialized assessments not within the common ken of juror experience and knowledge" concerning a "material issue in the case" and to share that assessment with the rest of the jury panel. *Id.* To reach this conclusion, the court reasoned that because these jurors used their professional experience to reach an opinion different from that of "expert proofs adduced at trial," their actions impermissibly "inject[ed] nonrecord evidence into the jury's deliberative process." *Id.* at 705; *see also State v. Thacker,* 95 Nev. 500, 596 P.2d 508, 509 (1979) (holding that it was misconduct for a juror to use his special knowledge of cattle and feed to compute an estimate of cattle weight and share his conclusion with other jurors).

By contrast, a majority of courts have held that a juror's intradeliberational statements, when based on personal knowledge and experience, do not constitute extraneous prejudicial information. Representative of this approach is *State v. Mann,* 131 N.M. 459, 39 P.3d 124, 132–33 (2002). In *Mann,* a juror who possessed a background in engineering and physics used the evidence presented at trial to perform a "fairly simple five-step probability calculation" and, based on that calculation, informed the other jurors that there was only a one-in-twenty million chance the accident had occurred in the way the defendant claimed. *Id.* at 127. The Supreme Court of New Mexico held that this was not juror misconduct, stating that "jurors may properly rely on their background, including professional and educational experience, in order to inform their deliberations" and may communicate their opinions to fellow jurors during deliberations. *Id.* at 132.

To reach this conclusion, the Supreme Court of New Mexico reasoned that, "so long as the knowledge [shared with other jurors] is not imparted to them outside the judicial proceeding in which they sit as jurors," the jury deliberations do not deprive a defendant of his right to a fair and impartial jury and the juror's use of "[his] extrinsic knowledge in the deliberative process does not fall into the category of extrinsic influence." *Id.* (quoting *State v. Anderson,* 748 S.W.2d 201, 205 (Tenn.Crim.App.1985), *overruled on oth-*

*er grounds by State v. Shelton,* 851 S.W.2d 134 (Tenn.1993)). The court reasoned that the juror who performed the probability calculation, "albeit with greater understanding than the average person, was engaging in deliberation of the evidence presented at trial." *Id.* at 133. Recognizing that the jury system intends for jurors to evaluate carefully evidence based on their background knowledge and life experiences, the court also stated that "[i]t would be inordinately bad policy to single out a juror who thoughtfully and conscientiously engaged in deliberation and presented his conclusion to the jury." *Id.* at 133–34; *see also United States v. Benally,* 546 F.3d 1230, 1237 (10th Cir. 2008) (stating that although jurors may not bring in "specific extra-record facts" relating to the case, "[c]ourts must be careful, however, not to confuse a juror who introduces outside evidence with a juror who brings his personal experiences to bear on the matter at hand"); *Marquez v. City of Albuquerque,* 399 F.3d 1216, 1223 (10th Cir.2005) (holding that a juror's application of her personal experience with training police dogs to the evidence presented at trial did not constitute extraneous prejudicial information); *Hard v. Burlington N. R.R. Co.,* 870 F.2d 1454, 1460–62 (9th Cir.1989) (holding that a juror's application of his knowledge of how to read an x-ray already admitted into evidence was not extraneous prejudicial information); *Nichols v. Busse,* 243 Neb. 811, 503 N.W.2d 173, 186–87 (1993) (stating that "the jury is expected to call on their personal experiences and common sense, and unless their knowledge is directly related to the litigation at issue, those experiences cannot be attacked as 'extraneous' prejudicial information").

■ After reviewing the arguments on both sides, we agree with the majority of courts and determine that the correct approach is to allow jurors to rely on their professional and educational expertise to inform their deliberations so long as they do not bring in legal content or specific factual information learned from outside the record. First, allowing a juror's intradeliberational statements furthers the purposes of CRE 606(b) by promoting the finality of verdicts and protecting jurors from harassment. *See* CRE 606(b) (prohibiting testimony regarding

"any matter or statement occurring during the course of the jury's deliberations" or about "the effect of anything upon his or any other juror's mind or emotions"); *cf. Wiser,* 732 P.2d at 1142–43. This approach prohibits a trial court from eliciting testimony that delves into "the [contents of the] jury's deliberations [or] a juror's mental processes leading to his or her decision" but still allows testimony regarding the jury's exposure to information or influences from outside the record. *Harlan,* 109 P.3d at 625; *accord Brooks,* 826 P.2d at 1178.

Second, this approach better conforms to our previous cases requiring jurors to consider only the evidence developed at trial and the law given in the trial court's instructions. *See Harlan,* 109 P.3d at 625; *Wadle,* 97 P.3d at 935; *Wiser,* 732 P.2d at 1141. Allowing jurors to use their professional expertise and education to inform their deliberations does not introduce new evidence from outside the record but, rather, allows jurors to use their life experiences to engage the record evidence and to participate in thoughtful deliberations. *See, e.g., Benally,* 546 F.3d at 1237; *Marquez,* 399 F.3d at 1223; *Hard,* 870 F.2d at 1462.

Finally, as other courts have noted, this approach recognizes the traditional role of the jury, that the jurors are expected to call on their personal experiences and common sense in reaching their verdict. *See Hard,* 870 F.2d at 1462 (reasoning that "[i]t is expected that jurors will bring their life experiences to bear on the facts of a case"); *United States ex rel. Owen v. McMann,* 435 F.2d 813, 817 (2d Cir.1970) (quoting *United States v. McKinney,* 429 F.2d 1019, 1022–23 (5th Cir.1970) (stating that "the subjective opinions of jurors, their additudinal expositions, [and] their philosophies" are the "human elements that constitute one of the strengths of our jury system, and we cannot and should not excommunicate them from jury deliberations")); *Nichols,* 503 N.W.2d at 186–87.

Applying this rule, we hold that, in this case, the juror's use of her background in engineering and mathematics to calculate Pippin's speed, distance, and reaction time and the sharing of those calculations with the other jurors did not constitute "extraneous"

information within the meaning of CRE 606(b). The juror did not introduce any specific facts or law relevant to the case learned from outside of the judicial proceedings but, rather, merely applied her professional experience and preexisting knowledge of mathematics to the evidence admitted at trial.

■ The line between a juror's application of her background professional and educational experience to the record evidence and a juror's introduction of legal content or specific factual information learned from outside the record can be a fine one. The test requires that the experience used by the juror in deliberations be part of the juror's background, gained before the juror was selected to participate in the case and not as the result of independent investigation into a matter relevant to the case. *See Harlan,* 109 P.3d at 624; *Wiser,* 732 P.2d at 1141. Moreover, while our test allows a juror to use her personal experience or knowledge where that knowledge is relevant to the matter at hand, it does not allow the juror to introduce extra facts or law, not introduced at trial, that are specific to parties or an issue in the case. *See Benally,* 546 F.3d at 1237; *Destination Travel,* 799 P.2d at 456–57.

Representative of a case that falls on the impermissible side of this line is *Destination Travel,* 799 P.2d at 455–57. *Destination Travel* was a breach of contract case where the plaintiff claimed damages for compensation for work done by its employees, making the pay rate of the employees a primary issue in the case. *Id.* at 455. The defendant claimed that juror misconduct occurred when one juror "provided members of the jury with estimates, based on prior business knowledge and experience, of what he assumed would have been the appropriate salaries for several of the plaintiff's employees." *Id.* at 455–56. The jury used those estimates, rather than the numbers presented in evidence, to calculate damages. *Id.* at 455–57. The court of appeals correctly determined that this amounted to extraneous prejudicial information improperly before the jury because the estimates constituted factual information specific to an issue in the case introduced from outside the record. Al-

though the juror derived the estimates from his professional experience, the juror did not merely use his background experience to evaluate and form an opinion on the salary numbers introduced at trial. Rather, the juror reached outside the record to introduce a new fact into evidence, and the jury based its damages award on that new fact, ignoring the numbers introduced at trial.

The circumstances of this case are distinguishable from *Destination Travel.* Unlike *Destination Travel,* the juror in this case did not introduce a new, extra-record fact specific to the parties or an issue in the case. At trial, the parties introduced evidence concerning Pippin's speed and distance from the intersection when she began to slide. The jury consultant's affidavit stated that, because of the juror's background as an engineer, the juror "was able to do calculations of speed and distance and reaction time" and that, based on these calculations, the juror "provided the jury with an estimate of Ms. Pippin's reaction time, and they all discussed Ms. Pippin's conduct in relation to such reaction time."

In this case, the juror merely used her previously held knowledge regarding engineering and mathematics to evaluate the evidence introduced at trial and to derive an opinion regarding whether Pippin was at fault in causing the accident. Although her background in engineering was relevant to issues in the case, her statement to the other jurors did not introduce specific facts concerning the parties or issues in the case, but only showed her assessment of the evidence that had passed through the court's gatekeeping function.

Because the juror in this case did not introduce extraneous information into the jury deliberations, the affidavit used to support these allegations is inadmissible to impeach the verdict. Accordingly, the trial court did not abuse its discretion in denying Kendrick's motion for a new trial on the basis of juror misconduct.

## IV. Conclusion

While we agree with the court of appeals' decision on the issues of res ipsa loquitur and juror misconduct, we hold that the trial court

erred by instructing the jury on the sudden emergency doctrine. Therefore, we reverse the court of appeals on that issue. We remand this case to that court to return the case to the trial court for a new trial.

Justice MARTINEZ concurs in the judgment, and Justice HOBBS joins in the concurrence.

Justice EID dissents.

Justice MARTINEZ, concurring in the judgment.

I disagree with the majority's analysis and conclusion concerning res ipsa loquitur. In my view, an instruction on res ipsa loquitur should have been given in this case. The majority's opinion summarily concludes that the first element of res ipsa loquitur was not satisfied. I think the facts of this case support the opposite conclusion.

As stated by the majority, in order to receive an instruction on res ipsa loquitur, a plaintiff must introduce evidence which, when viewed in the light most favorable to the plaintiff, establishes each of three elements as being more probable than not: (1) the event is of the kind that ordinarily does not occur in the absence of negligence; (2) responsible causes other than the defendant's negligence are sufficiently eliminated; and (3) the presumed negligence is within the scope of the defendant's duty to the plaintiff. *Ravin v. Gambrell,* 788 P.2d 817, 822 (Colo. 1990). If the plaintiff introduces sufficient evidence to establish these elements, the trial court is required to instruct the jury on the doctrine. *Id.*

In its analysis, the majority focuses on the first element, concluding that the plaintiff failed to introduce sufficient evidence to establish that the event that occurred is of the kind that ordinarily does not occur in the absence of negligence. The majority's explanation for why the first element is not satisfied here is simply that the fact that the vehicle slid at an icy intersection and collided with Kendrick's vehicle "is not in itself enough to constitute evidence of negligence or demonstrate that this is the kind of accident that does not occur unless someone has

been negligent."[1] Maj. op. at 1062. In making this conclusion, however, the majority fails to consider the full scope of the accident or event. The event in this case was not just a vehicle sliding through an icy intersection. Instead, the event was a vehicle traveling into an icy intersection at forty miles an hour, sliding on the ice, taking a sudden illegal turn at a speed too fast to complete the turn, careening over a median onto the wrong side of the road, and crashing into a lawfully stopped vehicle.

While the mere fact that a car skids or slides may not be sufficient to give rise to a presumption of negligence, the circumstances surrounding the sliding in this case do give rise to a presumption of negligence. As Judge Connelly wrote in his dissent to the court of appeals opinion, "[o]rdinarily, cars do not hurdle medians onto the wrong side of the road and crash into lawfully stopped vehicles without driver fault." *Kendrick v. Pippin*, 222 P.3d 380, 390 (Colo.App.2009). In reaching the opposite conclusion, the majority simply notes that Pippin was utilizing four-wheel drive and driving five miles below the speed limit. Nonetheless, these facts do not foreclose a presumption of negligence. The mere fact that Pippin was driving below the maximum speed limit does not mean that she was driving at a reasonable speed for the conditions.[2] Here, five miles below the maximum speed for normal conditions was too fast—as demonstrated by Pippin's inability to stop safely. Further, four-wheel drive may increase traction for acceleration, but not when braking.

Moreover, in addition to driving too fast for the conditions, the manner in which Pippin dealt with the sliding independently gives rise to a presumption of negligence. Pippin turned suddenly to the right to make an illegal turn. Her speed was too fast to successfully complete the turn and she instead

careened over the median. She made this sudden illegal turn to avoid the mere possibility of a collision if cars had begun to enter the intersection. She then crashed into Kendrick's car, which was lawfully stopped in the left hand turn lane, where it was foreseeable that cars would be stopped. Other than Pippin's speed on ice and sudden turn, the evidence in this case points to no additional factors, such as the movement of other vehicles, or even vehicles in unexpected locations, which may have caused the accident. Therefore, the unique circumstances of this accident suggest that this is the type of accident that does not occur in the absence of negligence.

In order to satisfy the second element of res ipsa loquitur, the plaintiff must produce evidence which establishes that the defendant's negligence was the more probable explanation for the accident, and that causes other than the defendant's negligence are sufficiently eliminated. *Ravin*, 788 P.2d at 822. The majority concluded that the fact that Pippin's vehicle slid on an icy road could have been as readily caused by circumstances beyond Pippin's control as by her negligence. In doing so, the majority seems to infer that icy conditions were the probable cause of the accident.

In Colorado, the mere presence of icy conditions should not serve as a per se reason to negate a res ipsa loquitur instruction. Adverse weather is not uncommon for six months out of the year throughout Colorado. Because adverse weather is so common in Colorado, drivers should be expected to appropriately adjust their driving habits in winter conditions. In some unusual circumstances, an unforeseeable and extra-hazardous icy condition on the road could justifiably negate a presumption of negligence. *See, e.g., Hetrick v. Dame*, 536 P.2d 1153, 1156

---

**1.** To the extent that the majority implies that res ipsa loquitur should only apply in the typical rear-end collision situation, I note that the *Bettner* quote supporting this proposition is actually referring to a specific factual application of res ipsa loquitur, the rear-end collision doctrine. Maj. op. at 1061. Although that specific doctrine does not apply here, it does not preclude application of res ipsa loquitur where the elements have been satisfied.

**2.** *See* § 42–4–1101(3), C.R.S. (2010) ("No driver of a vehicle shall fail to decrease the speed of such vehicle from an otherwise lawful speed to a reasonable and prudent speed when a special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.").

(Colo.App.1975) (not selected for official publication) (finding no error for failing to give instruction on rear-end collision doctrine when defendant presented evidence that an accident would not have occurred but for the unforeseeable and extra-hazardous icy condition on the portion of the roadway where the accident occurred); *see also Bettner v. Boring,* 764 P.2d 829, 831, 835 (Colo.1988) (finding no error for failing to give instruction on rear-end collision doctrine when a number of cars and a tractor-trailer had slid off the road or flipped over at an exceptionally icy part of the road). If the conditions are expectedly and foreseeably poor, however, this does not automatically preclude a presumption of negligence. *See e.g., Griffiths v. State,* 725 P.2d 49, 50 (Colo.App.1986) (upholding presumption of negligence instruction when, after days of snowy weather, driver slid on ice across center line and collided with plaintiff's truck). Thus, even when there are icy conditions, the entire circumstances of the accident should be taken into account when deciding whether to give the res ipsa loquitur instruction.

Here, the testimony at trial revealed that road conditions in the area were slushy and icy and that the intersection where the accident occurred was average and did not contain any unusual or unexpected patches of ice. Furthermore, there is no evidence of any other accidents at the intersection prior to the parties' collision, suggesting that the ice was not the sole cause of the accident. This makes the present case unlike *Bettner,* where a number of cars and a tractor-trailer had all gone off the road at the icy intersection in question. 764 P.2d at 831. Even assuming that the ice (and not Pippin's speed or inattention) was the most probable cause of the initial skidding, the ice was certainly not the most probable cause for Pippin's decision to make a sudden turn and crash into a car on the wrong side of the road. Therefore, because the only probable explanation I can deduce for this particular accident is Pippin's negligence, I conclude that the second element has been satisfied. Finally, the third element of res ipsa loquitur is easily satisfied here, because the defendant owed a duty of care to the plaintiff and all drivers on the road.

It is important to note that an instruction on res ipsa loquitur is not an immutable guarantee that a person will be found negligent. It is merely a presumption that shifts the burden to the defendant to prove that he or she was not negligent. *Stone's Farm Supply Inc. v. Deacon,* 805 P.2d 1109, 1114 (Colo.1991). Nonetheless, when the elements of res ipsa loquitur are met, as they are here, it is error not to give the instruction to the jury. This is true regardless of the presence of factual questions that could potentially persuade a jury to find that the presumption of negligence has been rebutted.

The totality of the circumstances indicates that the type of accident that occurred here—a car, going too fast to stop or turn safely, careening over a median into a lawfully stopped vehicle—is the kind that does not ordinarily occur in the absence of negligence. The road was not unusually or unforeseeably icy, and no other vehicles could have caused the accident, thus eliminating any causes other than Pippin's negligence. And Pippin indisputably owed a duty of care to Kendrick and all other drivers on the road. Thus, all of the elements of res ipsa loquitur have been satisfied, and the trial court should have given the instruction.

Accordingly, I concur with the judgment reversing the court of appeals, but conclude that the trial court's failure to instruct on res ipsa loquitur is a separate ground requiring reversal.

I am authorized to state that JUSTICE HOBBS joins in this concurrence.

Justice EID, dissenting.

I agree with the majority's conclusion that the district court properly refused to instruct the jury on res ipsa loquitur and properly denied Kendrick's motion for a new trial based on jury misconduct. But I disagree with its ultimate conclusion that Kendrick should be given a new trial on the ground that the district court improperly instructed the jury on the sudden emergency doctrine. The majority reasons that because Pippin was generally aware that the roads could be icy on the morning in question, she could not be confronted with a sudden emergency

when she actually confronted ice in the intersection in question. But a general awareness that an emergency *could* occur does not negate the existence of the emergency when it does *in fact* occur. Because we properly rejected the majority's "general awareness" rationale in *Young v. Clark*, 814 P.2d 364, 366 (Colo.1991), I respectfully dissent from the majority's opinion.

The majority finds that "[b]ecause Pippin's testimony shows that she anticipated the roads would likely be slick and icy ... [she] failed to present competent evidence that she was confronted with sudden or unexpected road conditions." Maj. op. at 1060. Essentially, the majority reasons that because Pippin generally anticipated that there could be slick road conditions on the morning of February 10, 2006, the specific conditions that she actually encountered at the intersection could not qualify as a sudden emergency. *Id.* But we expressly rejected this sort of general awareness argument in *Young*, 814 P.2d at 366. In that case, the plaintiff argued that "because ... the sudden emergency confronting [the defendant] arose from a common, and thus foreseeable, traffic problem"—a driver swerving in front of the defendant—the facts could not support a sudden emergency instruction. *Id.* We disagreed with that argument, holding that a sudden emergency instruction was properly given under the circumstances of the case. *Id.* at 366–67.

Similarly, in this case, even though Pippin generally anticipated that there could be icy road conditions on the morning of the accident, she presented sufficient evidence that she was confronted with a sudden emergency at the intersection under the specific circumstances of the case. As the majority points out, she testified that she knew that the roads could be icy that morning. Maj. op. at 1060. Indeed, she testified that, out of an abundance of caution, she drove below the speed limit and placed her vehicle in four-wheel drive. *Id.* These facts demonstrate that she was aware that the driving conditions could be affected by the weather that morning and she took appropriate precautionary steps—and that therefore she "was not placed in a perilous predicament through

any fault of his or her own." *Young*, 814 P.2d at 367.

The majority's error is to turn this general awareness of the possibility of poor driving conditions (and subsequent adjustments to conditions) into a per se bar to the appearance of a sudden emergency. *Id.* at 1060 ("Pippin's testimony demonstrates both that she specifically expected icy roads and intersections that morning and that she modified her driving in anticipation of encountering slick and icy conditions. *Having so testified,* the evidence does not support Pippin's claim that [she encountered a sudden emergency at the intersection in question].") (emphasis added). Pippin testified that she had traveled through a number of intersections without incident, and that she "hadn't had any problems up to th[e] point" of reaching the intersection in question. Upon reaching that intersection, however, she found "that particular intersection" to be more "slick" than the others. Her testimony suggests that while she was generally aware of conditions that morning, and adjusted her driving accordingly, she confronted unexpectedly slick conditions at the intersection. Stated differently, although slick road conditions could generally be anticipated that morning, she actually confronted such conditions only when she entered the intersection in question. Such testimony, in my view, is more than "sufficient" to support a sudden emergency instruction, and it was for the jury to decide whether Pippin was in fact confronted with such an emergency. *Young*, 814 P.2d at 366–67; *see also Hesse v. McClintic*, 176 P.3d 759, 764 (Colo.2008) ("We have long held that whether there was an emergency and whether the course of conduct chosen under the circumstances was reasonable are questions of fact to be determined by the trier of fact.").

We were correct to reject the majority's general awareness rationale in *Young*, and should do so again in this case. It is virtually always the case that a driver is generally aware of the possibility that an emergency situation could arise. For example, undoubtedly the drivers in *Stewart v. Stout*, 143 Colo. 70, 72, 351 P.2d 847, 848 (1960) (cited at maj. op. at 1059), were generally aware that an ice patch could appear on a mountain highway, even though neither had seen an ice patch up

to that point. Similarly, as the plaintiff argued in *Young*, the defendant driver must have been generally aware that drivers could swerve in his lane of traffic. *See also Davis v. Cline*, 177 Colo. 204, 208–209, 493 P.2d 362, 364 (1972) (A school bus unexpectedly moving into an adjacent travel lane could justify a finding of emergency when another driver swerves to avoid a collision); *Cudney v. Moore*, 163 Colo. 30, 32, 428 P.2d 81, 82 (1967) (sudden emergency instruction proper when mechanical failure precedes collision). Indeed, if a general awareness that a circumstance could arise forecloses the possibility of a sudden emergency when the circumstance does indeed arise, the sudden emergency instruction would never be given. After today, it is difficult to see what is left of the doctrine, at least with regard to icy driving conditions—a constant in Colorado of which drivers are generally aware.

Compounding the majority's general awareness error is the fact that it orders a new trial in this case on the ground that a sudden emergency instruction was given, even though it finds that the district court properly refused to instruct the jury on res ipsa loquitur and properly denied Kendrick's motion for a new trial based on juror misconduct. As the majority itself points out, however, a sudden emergency instruction merely informs the jury that it should consider the existence of an emergency when evaluating the defendant's conduct. Maj. op. at 1059. In other words, such an instruction simply repeats the negligence formulation—namely, that the jury should consider the defendant's conduct in light of the circumstances, including whatever circumstances the defendant claims to have suddenly confronted. As such, the jury in this case would have properly considered Pippin's testimony that she confronted unexpected icy conditions at the intersection even had the sudden emergency instruction not been given. In fact, the jury in this case was told in two separate instructions that the question was whether the defendant acted reasonably under the circumstances.[1] As we held in *Young*, a sudden emergency instruction "merely serves as an explanatory instruction, offered for the pur-

poses of clarification for the jury's benefit," that it is to apply the reasonable person standard to the circumstances of the case. 814 P.2d at 368. It is difficult to see how such an "explanatory instruction"—even if erroneously given—could have such an impact on the jury such that a new trial should be ordered as a matter of course, as the majority suggests.

It may be that the majority believes that the instruction is more than an explanatory instruction. *See Young*, 814 P.2d at 372 (Lohr, J., dissenting) (arguing for the abolition of the doctrine). If that is indeed the case, the majority should simply abolish the doctrine altogether, rather than leave the doctrine in place but on uncertain footing. *Id.* at 372 n. 3. Because I would affirm the decision of the court of appeals in all respects, including its determination that the district court did not abuse its discretion in finding sufficient evidence to warrant a sudden emergency instruction, and would therefore not order a new trial in this case, I respectfully dissent from the majority's opinion.

---

1. Instruction Number 19 instructed the jury that: "Negligence means a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, *under the same or similar circumstances,* to protect oneself or others from bodily injury." (Emphasis added.)

Instruction Number 20 instructed the jury that: "Reasonable care is that degree of care which a reasonably careful person would use *under the same or similar circumstances.*" (Emphasis added.)