REYES et al. v. GOSS et al.

No. 33935.     July 17, 1951.

Rehearing Denied Oct. 2, 1951.

*235 P. 2d 950.*

N. E. McNeill, Tulsa, for plaintiffs in error Smith-Horton Drilling Company and F. W. Abshire.

Horsley, Epton & Culp, Wewoka, for plaintiff in error Max Reyes.

Pinkerton & Wills, Tulsa, for plaintiffs in error Fordee-Rhoades Oil Company and Sam J. Rhoades.

Jewell Russell Mann, Tulsa, and Earl A. Davis, Wewoka, for defendants in error.

LUTTRELL, V.C.J.  This action was brought by Max Reyes against the defendant W. N. Goss and others, defendants in error in this court, to quiet title to a certain tract of land in Sem-

inole county. Sam J. Rhoades, Fordee-Rhoades Oil Company, Smith-Horton Drilling Company, and F. W. Abshire, claiming under an oil and gas lease made by Max Reyes, were made parties to the action and joined with the plaintiff in asserting his title to the property as against the defendants. The trial court rendered judgment in favor of the defendants, holding that title to the land in controversy was vested in the defendants, and plaintiff and his oil lessees appeal.

The decisive question presented for determination involves the validity of a resale tax deed under which plaintiff claims title. From the record it appears that defendant W. N. Goss and his father were the owners of the land, and that the land was sold at tax resale in 1945, and purchased by plaintiff. It appears established by the evidence that the last quarter of the 1944 tax was included in the resale notice and that it was not delinquent at the time of the first publication of the resale notice. Plaintiff contends that the evidence shows that due to a mistake in computing the amount of the tax for the year 1941, which was included in the resale, the total sum of taxes for which the resale was made was less than the amount actually due if the last quarter of the 1944 taxes had not been included therein, and that by reason of this fact the decisions of this court in House v. Mainka, 196 Okla. 174, 163 P. 2d 225; Sarkeys v. Evans, 197 Okla. 304, 170 P. 2d 229, and other decisions following the rule announced in those cases, are not applicable, but that the instant case comes within and is governed by the rule announced in Grisso v. Ellis, 194 Okla. 506, 153 P. 2d 104; Baldwin v. Gillaspie, 197 Okla. 175, 169 P. 2d 204, and other similar cases which hold that a resale tax deed is valid where the property is advertised for less than the amount of delinquent taxes, interest, penalties and costs due at the time of resale. Plaintiff contends that where the property is advertised for resale for less than the amount of taxes, interest, penalties and costs assessed against the property and actually delinquent at the time of the publication of the notice of resale, the fact that the county treasurer intended to and did include the last quarter of the previous year does not invalidate the resale tax deed, for the reason that all the decisions holding that the inclusion of the last quarter of the taxes for the previous year renders the resale invalid are based upon the ground or reason that thereby the land is sold for a greater amount of taxes than the amount actually delinquent when the first notice of resale was published. We are unable to agree with this contention.

While it appears that in House v. Mainka, supra, and the cases following the rule therein announced, the inclusion of the last quarter of the taxes for the previous year, which was not then due and delinquent in the notice of resale, had the effect of increasing the amount of taxes for which the land was sold so that it was in excess of the amount actually due and delinquent, all these cases unqualifiedly hold that the inclusion in the notice of resale of taxes which were not due and delinquent on the date of the first publication of notice of the resale renders the notice fatally defective, and the resale and deed based thereon invalid. Apparently the court in some of them, as in House v. Mainka, supra, called attention to the excessive amount of taxes stated in the notice in order to bring the case within the rule announced in Lind v. McKinley, 196 Okla. 4, 161 P. 2d 1016, in which case the question here presented was not involved, but in which case taxes for the year 1934 were erroneously included, thus rendering the amount for which the land was advertised and bid off excessive. But it is to be noted that in House v. Mainka we based the invalidity of the sale both on the error made by the county treasurer in including in the notice of tax resale the last quarter of the 1940 taxes, and the excessive amount of taxes specified in the notice which was caused by the error. In that case we said:

"The notice should have excluded the last quarter of the 1940 taxes. Shnier v. Vahlberg, 188 Okla. 471, 110 P. 2d 593. The notice of resale was erroneous in that it was excessive in the sum of approximately $6, which was the portion of the 1940 taxes which had not yet become due and delinquent. That error and excessive amount in the notice for the reason indicated renders the sale invalid. See Lind v. McKinley, 196 Okla. 4, 161 P. 2d 1016."

In Shnier v. Vahlberg, cited in the above quotation, we called attention to the fact that the term "delinquent taxes" as used in the statute providing for notice of the resale meant taxes authorized by law, levied upon taxable property, remaining unpaid after the time for the payment of the same, and held that property should be advertised and sold at resale only for ad valorem taxes that were delinquent as of the date when the resale notice should be first published, and which taxes would be canceled by the resale.

In some of the later cases, the fact that the inclusion of the last quarter of the previous year's taxes renders the tax excessive is not stressed. Thus in Williamson v. Hart, 199 Okla. 328, 186 P. 2d 71, we said:

"The last quarter of these taxes did not become delinquent until May 1st, under the provisions of 68 O.S. 1941 §351. This court has held that, where the amount for which the property is advertised and sold includes an item of tax which does not become delinquent until after the first publication of notice of resale, the procedure is ineffective to give the county treasurer authority to sell the same and renders the resale tax deed based thereon void. House v. Mainka, 196 Okla. 174, 163 P. 2d 225; Sarkeys v. Evans, 197 Okla. 304, 170 P. 2d 229; Carman v. McMahan, 198 Okla. 367, 178 P. 2d 626."

In Lucas v. Lively, 202 Okla. 313, 213 P. 2d 459, we said:

"In Whitehead v. Garrett, 199 Okla. 278, 185 P. 2d 686; House v. Mainka, 196 Okla. 174, 163 P. 2d 225; Sarkeys v. Evans, 197 Okla. 304, 170 P. 2d 229, and other cases, we held that the inclusion in a notice of resale of taxes for the last quarter of the current year which were not delinquent at the time of the first publication of the notice rendered the notice fatally defective and the resale invalid, and that the resale deed issued in such case was void."

In the cases relied upon by plaintiff, Hight v. Collingsworth, 194 Okla. 507, 153 P. 2d 96; Grisso v. Ellis, supra; Baldwin v. Gillaspie, supra, and other similar cases, the question of whether the last quarter of the previous year's taxes was included in the notice of resale, and its effect upon the resale, if included, was not considered or adjudicated. The trial court did not err in holding the resale deed invalid because of the inclusion of the last quarter of the 1944 taxes in the notice of resale.

The contention of plaintiff that the defendants were divested of title by adverse possession is, in our judgment, wholly untenable. From the record it appears that Goss and his father purchased the property in 1926; that it was rough land and was in the same enclosure with an 80-acre tract owned or occupied by a man named Creech, who was by Goss given the permissive right to use the tract herein involved; that in 1930, one Williams, a son-in-law of Creech, moved upon the land, and after the death of his father-in-law in 1933, occupied it without paying any rent, and apparently without any special arrangement with Goss, although there is a conflict of testimony on that point. But the testimony of Williams himself conclusively shows that he did not at any time claim that he was the owner of the land, for he testified that after the tax sale he went to Goss to see if he could buy the surface of the land, get a quitclaim deed to it, and that at that time he was using it as pasture. On cross-examination he testified that he knew that Max Goss and his father owned the surface of the land back in 1924. He further testified as follows:

"Q. When did their ownership cease? A. Well, when it sold for taxes.

"Q. Up until the time it sold for taxes they owned it, is that right? A. I wouldn't know that they did.

"Q. As far as you know, they owned it until it was sold for taxes? A. Yes."

These admissions by Williams show beyond question that he did not claim to be the owner of the land, and that his possession was not adverse to Goss and his father, and was not such possession that title by prescription could be claimed to result therefrom.

Plaintiff also contends that the trial court committed reversible error in refusing to give its reasons for overruling the motions for new trial filed by the plaintiff and his lessees Sam J. Rhoades and others. The cases cited by him in support of this contention, Little v. Lovett, 193 Okla. 157, 141 P. 2d 794; Shreve v. Cornell, 182 Okla. 193, 77 P. 2d 1; Alexander v. Alexander, 179 Okla. 614, 67 P. 2d 33, and all other cases which we have examined holding that the trial court, upon request, should announce its reasons when passing upon a motion for new trial, are cases where the motion for new trial was sustained. No case is cited by plaintiff holding that this duty devolves upon the trial court when a motion for new trial is overruled, and a search of the cases in which the question was involved indicates that heretofore the rule has been applied only where the motion for new trial was sustained. The reason why the rule should apply when a motion is sustained, and should not apply when the motion is overruled is, we think, obvious.

When a motion for new trial is sustained the trial court is not limited to the grounds stated in the motion, but has a broad latitude or discretion which will not be disturbed by this court, unless it is shown that the court has acted arbitrarily or abused its discretion, or has manifestly erred in some pure, simple, and unmixed question of law. This is pointed out in Little

v. Lovett, supra, in which the trial court gave three reasons for sustaining the motion for new trial, (1) a doubt in the court's mind as to the correctness of the instructions on contributory negligence given by him, (2) the opinion of the court that under the undisputed facts of the case justice demanded a verdict for the plaintiffs in a reasonable amount, and (3) a feeling on the part of the court that it could not conscientiously approve the verdict returned. We held that the first reason as to the instructions was erroneous as a matter of law, but that the other two reasons lay within the court's sound judicial discretion, and sustained its granting of the motion. In that case we said that the trial court within its discretion could set aside the verdict of the jury if it failed to meet "the responsive and affirmative approval and conscience of the trial court."

Obviously, in such case, unless the trial court stated its reasons for sustaining the motion, the moving party, appealing from its ruling, would be groping in the dark as to the reasons therefor, since it would be impossible for him to point out to this court any abuse of discretion or arbitrary action on the part of the trial court when he did not know the court's reason for sustaining the motion. On the other hand, when the motion is overruled, the movant on appeal may take advantage of any error assigned in his motion which would justify reversal, the ground upon which he will base his attack on appeal being of his own choosing. In such case, if he can establish in this court reversible error on the part of the trial court, the reason which actuated the trial court is immaterial.

Affirmed.

ARNOLD, C.J., and CORN, GIBSON, DAVISON, and JOHNSON, JJ., concur. WELCH and O'NEAL, JJ., dissent.

O'NEAL, J. (dissenting). I am unable to concur in the opinion in the above cause insofar as it holds the resale tax deed involved to be invalid.

There is some evidence to the effect that the county treasurer in computing the total amount of taxes, interest, penalties and costs in preparing the notice or advertisement for the sale may have intended to include the amount represented by the last quarter of taxes for 1944 ($2.61) plus the penalty of 37c thereon. That would have been $2.98 more than was actually due and delinquent on April 12, 1945, the date of the first publication of the notice of sale. But in computing and stating the aggregate amount of the delinquent taxes of the years 1941, 1942, 1943, penalties, etc., *for which the land was to be sold,* the county treasurer arrived at the total of $56.97. That amount was a few cents less than the total of (1) all taxes for 1941, (2) all taxes for 1942, (3) all taxes for 1943, and (4) three-fourths only of the taxes for 1944. The land was advertised to be sold for said sum of $56.97. It was sold for that sum. That sum was not large enough to include any part of the last quarter of 1944 taxes or any penalty thereon, therefore, it did not include any part thereof. If the treasurer did intend to include that last quarter, he failed to do so by the computation he made. The result was that the land was actually advertised for sale and actually sold for a few cents less than the total amount of taxes, interest, penalty and costs due and delinquent on April 12, 1945, instead of more.

The law, 68 O. S. 1941 §432b, provides that the notice of sale shall show the total amount of all delinquent taxes, costs, penalties and interest due and unpaid on each tract of land advertised for resale, and further provides:

"It shall not be necessary to set forth the amount of taxes, penalties, interest and costs, accrued each year separately, but it shall be sufficient to publish the total amount of all due and unpaid taxes, penalties, interest and costs."

The notice as published complied with these provisions except as to the correctness of the total amount due. That amount was slightly incorrect in that it was too small by 47c.

This court has many times held that an advertisement or sale of land for the last quarter of the current year's taxes not delinquent when the first notice is published renders the sale invalid. Rogers v. Sheppard, 200 Okla. 203, 192 P. 2d 643; Lind v. McKinley, 196 Okla. 4, 161 P. 2d 1016; House v. Mainka, 196 Okla. 174, 163 P. 2d 225; Sarkeys v. Evans, 197 Okla. 304, 170 P. 2d 229; Carman v. McMahan, 198 Okla. 367, 178 P. 2d 626. But those decisions clearly demonstrate that the reason for holding such sales invalid is that they result in a sale of the land for an amount in excess of the taxes, interest, penalties and costs actually due and delinquent.

In Sarkeys v. Evans, supra, it is held:

"The undisputed evidence is to the effect that the $561.53 designated as 'total due' was excessive in the sum of about $13, explained by adding in of the last quarter of 1938 taxes which was not delinquent at the time of first publication of notice, such last quarter amounting to some $13."

In House v. Mainka, supra, it is said:

"The notice of resale was erroneous in that it was excessive, in the sum of approximately $6, which was the portion of the 1940 taxes which had not yet become due and delinquent. That error and excessive amount in the notice for the reason indicated renders the sale invalid."

In Lind v. McKinley, supra, it is said:

"It therefore follows that by reason of the resale of the land for a substantial sum in excess of the amount of taxes, penalties and costs the power to sell was defeated, the defendant was entitled to have her tender accepted, and the trial court erred in rendering judgment for plaintiff."

It thus appears that the reason, and the only reason, for holding such sales invalid is that they result in the sale of the land involved for an amount in excess of the taxes, interest, penalties

and costs against the land actually due and delinquent.

As shown above, the amount for which the land was advertised ($56.97) was, in fact, at least 47c less than the amount of taxes, interest, penalties and costs against the land actually due and delinquent on April 12, 1945, not including any portion of the last quarter of 1944 taxes or any penalty thereon.

In Hight v. Collingsworth, 194 Okla. 507, 153 P. 2d 96, it was held:

"A resale tax deed based upon the 1939 tax resale is not invalid because the property was advertised at the resale for less than the amount of taxes, interest, penalties, and costs assessed against the property and delinquent at the time of the resale."

In Baldwin v. Gillaspie, 197 Okla. 175, 169 P. 2d 204, it was held:

"A resale tax deed based upon a tax resale is not invalid because the sum of the taxes, interest, penalties and costs stated in the notice as $411.93 is less by $6.92 than would have been reflected if correct computation of penalties and costs had been made."

The facts in Baldwin v. Gillaspie, supra, are quite similar to the facts in the instant case.

In Meyers v. Lackey, 194 Okla. 586, 153 P. 2d 1020, it is held:

"The recitation in a resale tax deed that land was bid off at resale for a stated sum, which sum was less than the amount of all taxes, interest, penalties and costs, on the property sold at resale, does not render the resale deed invalid."

Under the foregoing cases the sale was not invalid because the land was advertised and sold for less than the total amount of taxes, interest, penalties and costs due and delinquent against the land. It cannot be said that the sale was invalid for the reason the land was advertised and sold for more than the amount of the taxes, interest, penalties and costs due at the time the first notice of sale was published for the reason that the record and uncontradicted evidence was that the amount for which the land involved was advertised and sold was less than the total amount of the taxes, interest, penalties and costs.

The trial court erred in holding the resale tax deed involved invalid and in canceling said resale tax deed.

The evidence does not support a finding that the land was advertised for resale and sold for an amount in excess of the delinquent taxes, interest, penalties and costs against the land as of April 12, 1945.

For the reasons above stated, I respectfully dissent from the opinion insofar as it holds the resale tax deed invalid.

I am authorized to say that Mr. Justice WELCH concurs in these views.