2012 OK 39

Guy T. LEDBETTER and Midge Ledbetter, individually and as husband and wife, Plaintiffs/Appellees,

v.

Derek G. HOWARD, D.O., and Radiology Services of Ardmore, Inc., jointly and severally, Defendants/Appellants.

No. 105,902.

Supreme Court of Oklahoma.

April 24, 2012.

that Dunlap and been previously disciplined twice.

☞44(3)

Tom L. King, Richard M. Glasgow, Justin T. King, King Law Firm, Oklahoma City, Oklahoma, for plaintiffs/appellees.

Hilton H. Walters, R.Gene Stanley, Rife & Walters, Oklahoma City, Oklahoma, for defendants/appellants.

Allison A. Cave, Allison A. Cave, PLLC, Edmond, Oklahoma.

WATT, J.:

¶1 We granted certiorari to address a single issue: whether the trial court erred in granting a motion for new trial on grounds of juror misconduct.[1] Resolution of this issue requires us first to answer the question of whether the juror's affidavit was properly submitted as evidence in the hearing on the request for new trial.

¶2 We hold that the juror's affidavit demonstrating the injection into the deliberative process of extraneous prejudicial information was admissible under the "extraneous prejudicial information" exception to *12 O.S.2011 § 2606* (B).[2] Furthermore, counsel were entitled to rely on the foreperson's guarantee to the trial court that she would not allow her professional expertise to override the testimony presented. Because there is evidence to the contrary, we hold that there was no abuse of discretion in ordering a new trial for juror misconduct during deliberations.

## FACTS AND PROCEDURAL HISTORY

¶3 Ledbetter has a long history of diabetes which grew worse over time requiring increased medical intervention. In 1997 or 1998, he developed signs of peripheral neuropathy of the legs, a diabetic complication affecting the nerves and which can lead to serious leg and foot complications, including amputation.

¶4 On May 31, 2005, Ledbetter went to his primary care physician, Dr. Kevin Reed, complaining of swelling, redness, and discomfort in his left foot and leg. Dr. Reed diagnosed Ledbetter with cellulitis, an infection of the soft tissues, and began treating him with a broad-spectrum oral antibiotic.

¶5 On Dr. Reed's orders, Ledbetter returned for a followup appointment on June 7th. There being no apparent improvement in Ledbetter's leg, Dr. Reed admitted him to the hospital and began intravenous antibiotics. Two days later, Dr. Reed ordered x-rays of Ledbetter's left foot because of concerns related to a potential bone infection.

---

1. In the petition in error, Howard and Radiology Services asserted that the trial court erred in failing to grant them a continuance to conduct discovery concerning the alleged juror misconduct. They did not pursue this argument on certiorari. Although *Hough v. Leonard*, 1993 OK 112, 867 P.2d 438 teaches that the prevailing party in the Court of Civil Appeals may obtain review of issues properly raised and briefed on appeal but not addressed by the appellate court without filing a petition for certiorari, we need not do so here. The trial court never ruled on the continuance request and the doctor and his employer waived any such argument by an- nouncing their readiness to proceed at the May 7, 2008 new trial hearing. Transcript of Motions Hearing, May 7, 2008, providing in pertinent part at p. 3:

 "THE COURT ... Are the Plaintiffs ready to proceed?
 MR. KING: Yes, Your Honor.
 THE COURT: And the Defendant Howard?
 MR. STANLEY: Yes, Your Honor...."
 *Bentley v. Melton*, 1957 OK 229, ¶3, 316 P.2d 591 [Party waives issue by failing to secure a ruling or by failing to reassert the same.].

2. Title *12 O.S.2011 § 2606* (B), see note 10, infra.

Howard read the x-rays concluding that there were no dislocations or fractures and that the foot was radiographically normal.

¶ 6 Having improved, Ledbetter was discharged from the hospital on June 11th. Although the symptoms continued to abate during the three (3) weeks after discharge, Ledbetter continued to have swelling in his left ankle. Dr. Reed ordered a second x-ray on July 5th which showed a dramatic deterioration of the bones in Ledbetter's left foot. Dr. Reed referred Ledbetter to an orthopedic surgeon who sent Ledbetter to see Dr. Steven Lund, a podiatrist with experience treating Charcot Foot.[3]

¶ 7 Dr. Lund diagnosed Ledbetter with Charcot Foot. Because of the severity of the foot's deformity, Dr. Lund recommended reconstructive surgery to attach an external fixator to Ledbetter's foot. Ledbetter wore the fixator, which was adjusted daily, for approximately seven weeks. Thereafter, Ledbetter spent several weeks in a cast and then in a specially crafted boot for six to eight months. Finally, Ledbetter was fitted with a brace intended to be worn continually with a shoe. However, because the brace was uncomfortable, Ledbetter discontinued its use.

¶ 8 The Ledbetters sued Howard and Radiology Services for negligence. Ledbetter alleged that the doctor misread the July 9th x-ray causing delayed treatment of his rapidly deteriorating left foot. Coupled with the malpractice claim was the wife's plea for loss of consortium. The action was tried to a jury which returned a verdict in favor of the defendants. The Ledbetters filed two motions: one for judgment notwithstanding the verdict; and one for new trial on grounds of

juror misconduct during deliberations. The trial court refused to grant judgment to the Ledbetters but sustained their motion for new trial finding that "**juror misconduct affected materially the substantial rights of the [Ledbetters]**".[4] The Court of Civil Appeals reversed and remanded ordering the trial court to enter judgment in favor of Howard and Radiology Services. The cause was assigned for consideration to this chamber on December 5, 2011.

## Standard of Review

 ¶ 9 It has long been recognized that the granting of a new trial is within the wide discretion of the trial court.[5] We will not reverse an order granting a new trial unless error is clearly established in respect to some pure, simple, and unmixed question of law.[6] The judge who presides at the trial: hears the testimony; observes the witnesses; and has full knowledge of the proceedings during the trial process. It is that adjudicator who is in the best position to know whether substantial justice has been done. Where such a judge sustains a motion for new trial, a clear showing of manifest error and an abuse of discretion must be made before this Court is justified in reversing the ruling. The threshold for upholding the grant of a new trial is much lower than where the motion is overruled.[7] Furthermore, when, as here, the new trial is granted by the same judge who tried the case, a much stronger showing of error or abuse of discretion is required for this Court to reverse than if a party appeals from a refusal to grant a new trial.[8]

---

3. Charcot Foot is a disease of the nerves causing the deterioration of the bony structure of the foot, related to diabetes, which can lead to multiple fractures in the bony regions and which is generally a progressive condition developing over a period of time. *Matter of Workers' Compensation of Pederson*, 939 P.2d 740 (Wyo.1997); *Fidelity Mutual Life Ins. Co. v. Workmen's Compensation Appeal Bd.*, 126 Pa.Cmwlth. 188, 559 A.2d 84 (1989); *Durphy v. Kaiser Foundation Health Plan*, 698 A.2d 459 (D.C.App.1997).

4. Transcript of Motions Hearing, May 7, 2008, p. 14.

5. *Sligar v. Bartlett*, 1996 OK 144, ¶ 13, 916 P.2d 1383; *Propst v. Alexander*, 1995 OK 57, ¶ 8, 898

P.2d 141; *Austin v. Cockings*, 1994 OK 29, ¶¶ 9–10, 871 P.2d 33; *Rein v. Patton*, 1953 OK 117, ¶¶ 19–20, 208 Okla. 442, 257 P.2d 280; *Harper v. Pratt*, 1943 OK 281, ¶ 3, 193 Okla. 86, 141 P.2d 562.

6. *Rein v. Patton*, see note 5, supra; *Reyes v. Goss*, 1951 OK 215, ¶ 11, 205 Okla. 140, 235 P.2d 950.

7. *Rein v. Patton*, see note 5, supra; *Harper v. Pratt*, see note 5, supra.

8. *Sligar v. Bartlett*, see note 5, supra; *Propst v. Alexander*, see note 5, supra.

¶ 10 The Ledbetters allege they are entitled to a new trial based on juror misconduct.[9] They insist that the jury foreperson, a licensed practical nurse who regularly assists with the care and treatment of diabetic patients, improperly injected extraneous prejudicial information into the deliberative process. Howard and Radiology Services contend that the juror's affidavit utilized to impeach the verdict is inadmissible pursuant to *12 O.S.2011 § 2606* (B).[10] In the alternative, they argue that the foreperson's statement interjected no extraneous information improperly influencing any juror. We disagree with both of the defendants' arguments.

**¶ 11 a) The juror's affidavit regarding the foreperson's statements during deliberations is admissible under the "extraneous prejudicial information" exception to *12 O.S.2011 § 2606* (B).**

¶ 12 The primary goal of statutory interpretation is to ascertain and, if possible, give effect to the intention and purpose of the Legislature as expressed by the statutory language.[11] Intent is ascertained from the whole act in light of its general purpose and objective[12] considering relevant provisions together to give full force and effect to each.[13] The Court presumes that the Legislature expressed its intent and that it intended what it expressed.[14] Statutes are interpreted to attain that purpose and end[15] championing the broad public policy purposes underlying them.[16] Only where the legislative intent cannot be ascertained from the statutory language, *i.e.* in cases of ambiguity or conflict, are rules of statutory construction employed.[17] If the language is plain and clearly expresses the legislative will, further inquiry is unnecessary.[18]

¶ 13 Title *12 O.S.2011 § 2606* (B)[19] provides in pertinent part:

A juror **may**[20] testify on the question whether **extraneous prejudicial informa-**

---

9. Title *12 O.S.2011 § 651* providing in pertinent part:
 "A new trial is a reexamination in the same court, of an issue of fact or law or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. The former verdict, report, or decision shall be vacated, and a new trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial rights of the party:
 ... 2. Misconduct of the jury or a prevailing party ..."

10. Title 12 O.S 2011 § 2606(B) providing:
 "Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon the juror's mind or another juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes during deliberations. **A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention** or whether any outside influence was improperly brought to bear upon any juror. An affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying shall not be received for these purposes." [Emphasis provided.]

11. *White v. Lim,* 2009 OK 79, ¶ 12, 224 P.3d 679; *Head v. McCracken,* 2004 OK 84, ¶ 13, 102 P.3d 670; *Balfour v. Nelson,* 1994 OK 149, ¶ 8, 890 P.2d 916, 39 A.L.R.5th 935.

12. *Keating v. Edmondson,* 2001 OK 110, ¶ 8, 37 P.3d 882; *McSorley v. Hertz Corp.,* 1994 OK 120, ¶ 6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.,* 1992 OK 61, ¶ 8, 832 P.2d 834.

13. *Haney v. State,* 1993 OK 41, ¶ 5, 850 P.2d 1087; *Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n,* 1992 OK 153, ¶ 8, 842 P.2d 750.

14. *Minie v. Hudson,* 1997 OK 26, ¶ 7, 934 P.2d 1082; *Fuller v. Odom,* 1987 OK 64, ¶ 4, 741 P.2d 449; *Darnell v. Chrysler Corp.,* 1984 OK 57, ¶ 5, 687 P.2d 132.

15. *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, ¶ 5, 901 P.2d 800, *cert. denied,* 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995); *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Comm'n,* 1979 OK 62, ¶ 5, 594 P.2d 1210.

16. *Haggard v. Haggard,* 1998 OK 124, ¶ 1, 975 P.2d 439; *Price v. Southwestern Bell Tel. Co.,* 1991 OK 50, ¶ 7, 812 P.2d 1355.

17. *State ex rel. Dept. of Human Serv. v. Colclazier,* 1997 OK 134, ¶ 9, 950 P.2d 824; *Matter of Estate of Flowers,* 1993 OK 19, ¶ 11, 848 P.2d 1146.

18. *White v. Lim,* see note 11, supra; *Rout v. Crescent Public Works Auth.,* 1994 OK 85, ¶ 10, 878 P.2d 1045.

19. Title *12 O.S.2011 § 2606* (B), see note 10, supra.

20. The term "may" is ordinarily construed as permissive. See, *MLC Mort. Corp. v. Sun America Mortgage Co.,* 2009 OK 37, fn. 17, 212 P.3d

tion was improperly brought to the jury's attention ... An affidavit ... of any statement by the juror concerning a matter about which the juror would be precluded from testifying shall not be received ... [Emphasis provided.]

The statute does not preclude the admission of all juror affidavits in queries involving juror misconduct. Instead, it blocks the offering of juror affidavits on a matter about which the juror would be precluded from testifying. **Jurors are specifically allowed under the statute to testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention.** Therefore, if the foreperson's statements constituted extraneous prejudicial information, admission of the juror-affidavit was not precluded.

¶ 14 During *voir dire*, the foreperson testified that she was a licensed practical nurse involved in home-health care and that she dealt daily with diabetics but never with anyone with Charcot foot. When the trial court asked whether she ever had a diabetic patient with complications she confirmed that she had. She also assured the Court that **nothing about her experiences** would cause her to be biased and that **she would not substitute her experience for the testimony of the witnesses in the trial.**[21]

¶ 15 In support of the new trial argument, the Ledbetters obtained a sworn affidavit from one of the foreperson's fellow jurors. It provides that: 1) the foreperson took

charge of the deliberations "**eagerly sharing her experiences and knowledge** of the proper care and treatment of diabetic patients"; the foreperson and another juror stated that "they had been in similar situations as Dr. Howard" and that it was "**common place**" **to note a patient's condition as being "normal" when it was not;** the foreperson **shared "her experience and knowledge of diabetes"** stating that "all diabetics have podiatrists" then questioned why Ledbetter did not have a treating podiatrist; the foreperson **expounded that she was "certain" Ledbetter had prior foot problems** and was not following his doctor's instructions because, **in her experience, "most diabetics do not follow doctor's instructions;"** the foreperson **hypothesized that Ledbetter wasn't following his doctor's instructions because he was taking four shots of insulin per day** and that was "certainly a lot of insulin;" and, finally, the foreperson told jurors that because Ledbetter had Charcot foot, he **would "likely have had the same problems and result" regardless of any delay in treatment** caused by Howard's misreading of the original x-ray.[22]

¶ 16 These statements were clearly improper under *12 O.S.2011 § 2606* (B). They were: made as statements of fact by the foreperson; involved purportedly extraneous information arising solely from the foreperson's professional experience; and were intended to sway the jury toward a defendant's verdict. The juror's affidavit regarding these statements was admissible under the "extraneous prejudicial information" exception to *12 O.S.2011 § 2606* (B).[23]

1199; *Osprey LLC v. Kelly–Moore Paint Co., Inc.,* 1999 OK 50, ¶ 14, 984 P.2d 194; *Shea v. Shea,* 1975 OK 90, ¶ 10, 537 P.2d 417.

21. Partial Transcript of Jury Trial, July 7–9, 2009, Volume I, providing in pertinent part at pp. 88–90:
"... THE COURT: Okay. Is there anything about your training or experience that might impact on the way you'd look at this trial?
JUROR NORTON: No, except that I deal with—I do deal with diabetics daily....
THE COURT: Have you ever dealt with someone with Charcot foot?
JUROR NORTON: No....
THE COURT: You've already said you've dealt with diabetics and, I assume, have diabetics on your patient roll. And I'm assuming that some of them have probably had complications arising from that diabetes.
JUROR NORTON: Yes.

THE COURT: Would that experience make it difficult for you to be impartial in this lawsuit?
JUROR NORTON: (Shook head from side to side.)
... THE COURT: Do you feel confident that you will not be that ER nurse that I talked about earlier and substitute your experience for the testimony of the witnesses in this trial?
JUROR NORTON: Yes...."

22. Affidavit of Dayle Baker, Plaintiff's Exhibit D to Motion for Judgment Notwithstanding the Verdict or in the Alternative Motion for New Trial, filed March 24, 2008.

23. Title *12 O.S.2011 § 2606* (B), see note 10, supra. See also, the following cases in which evidence was admissible as "extraneous" under the statutory provision: *Propst v. Alexander,* see note 5, supra [In a negligence case, jurors considered workers' compensation after plaintiff's

¶ 17 b) **Counsel were entitled to rely on the foreperson's guarantee to the trial court that she would not allow her professional expertise to override the testimony presented. Because there is admissible evidence to the contrary, the trial court did not abuse its discretion in ordering a new trial for juror misconduct during deliberations.**

■ ¶ 18 This is not a case in which we need make any sweeping statement as to when or how a professional may utilize individual training or expertise in the deliberative process or even may be allowed to communicate the same to fellow fact finders.[24] Neither does this cause stand for the proposition that a single false answer to a question on *voir dire* requires or supports the ordering of a new trial. Here, **the simple fact is that during *voir dire*, the foreperson clearly stated that she would not substitute her experiences as a nurse to diabetic patients to over-ride witness testimony. The affidavit indicates she did exactly what she promised not to do once deliberations began and went even further by attempting to influence her fellow jurors based on her professional knowledge and experiences, all while acting in the leadership position of foreperson on the jury.**[25]

¶ 19 We addressed the issue of a juror giving untruthful answers to a question during *voir dire* in *Dominion Bank of Middle Tenn. v. Masterson*, 1996 OK 99, 928 P.2d 291. There, the juror gave false information concerning his involvement in prior lawsuits. We stated:

> We need not determine whether the juror was biased against [the defendant] nor whether he had some influence upon the other jurors. It is enough that [the defendant] was deprived of an opportunity to delve deeper into [the juror's] qualifications during *voir dire* and under Oklahoma case law is entitled to a new trial.

Unlike the juror in *Dominion*, the foreperson here **gave sworn testimony that she would not allow her expertise and training to override the testimony presented. Thereafter, she accepted the leadership position as foreperson of the jury,** and specifically informed the other jurors that because **Ledbetter had Charcot foot, he would "likely have had the same problems and result" regardless of any delay in treatment caused by Howard's misreading of the original x-ray.**[26] She made these statements based solely on her experience and training in treating diabetics, *not* on the basis of the evidence presented.

¶ 20 Trial courts must scrupulously avoid allowing a jury to have access to matters not proper for consideration or to perform their functions irregularly.[27] The trial court

surgeon accidentally mentioned it in violation of motion in limine.]; *Willoughby v. City of Oklahoma City*, 1985 OK 64, 706 P.2d 883 [Juror conducted independent investigation relating to cause of death.]; *Negrate v. Gunter*, 1955 OK 118, 285 P.2d 194 [Jurors viewed exhibits which had not been admitted into evidence.]; *Peoples Finance & Thrift Co. v. Ferrier*, 1942 OK 343, 191 Okla. 364, 129 P.2d 1015 [Jurors considered a memo used by counsel that was not admitted into evidence.]; *Swift & Co. v. Kirkley*, 1942 OK 395, 191 Okla. 610, 131 P.2d 998 [Jurors viewed premises where accident could have happened without court permission]; *Graybeal v. Martin Sand & Gravel*, 2008 OK CIV APP 28, 179 P.3d 1278 [Jurors' affidavits admissible where jury foreperson made statement of fact indicating that personal representative had received large insurance settlement.]; *Thompson v. Krantz*, 2006 OK CIV APP 60, 137 P.3d 693 [A juror in a medical malpractice case conducted an internet search and obtained evidence regarding medical procedures and the results of other, similar lawsuits.]; *Crane v. Nuttle*, 2005 OK CIV APP 73, 121 P.3d 1124 [Three jurors viewed the accident scene to "see how the accident could have happened" without court permission.]; *Bledsoe By &*

*Through Bledsoe v. Truster*, 1992 OK CIV APP 25, 839 P.2d 673 [Jury misconduct in speculating that excluded deposition contained material weighing on decision].

24. See, *Marquez v. City of Albuquerque*, 399 F.3d 1216 (10th Cir.2005); *Kendrick v. Pippin*, 252 P.3d 1052 (Colo.2011); *Meyer v. State*, 119 Nev. 554, 80 P.3d 447 (2003); *State v. Mann*, 131 N.M. 459, 39 P.3d 124 (2002); *People v. Maragh*, 94 N.Y.2d 569, 708 N.Y.S.2d 44, 729 N.E.2d 701 (2000); *Brooks v. Zahn*, 170 Ariz. 545, 826 P.2d 1171 (Ct.App.1991); *Baker v. Wal–Mart Stores, Inc.*, 727 S.W.2d 53 (Tex.App.1987). See also, M. Mushlin, "Bound and Gagged: The Peculiar Predicament of Professional Jurors," 25 Yale L. & Pol'y Rev. 239 (2007).

25. See, *Stevens v. State*, 94 Okla.Crim. 216, 232 P.2d 949 (1951) [Election foreperson reflects evidence of juror's qualities for leadership.].

26. See, ¶ 15 and accompanying footnotes, supra.

27. *Barnhart v. International Harvester Co.*, 1968 OK 49, ¶ 0, 441 P.2d 1000.

attempted to meet that duty during *voir dire*. **Counsel were entitled to rely on the foreperson's guaranty to the trial court that she would not allow her professional expertise to override the testimony presented.** There is admissible evidence to the contrary. The foreperson made improper statements, involving extraneous information, intending to sway the jury toward a defendant's verdict. Under these facts, we determine that the plaintiffs are entitled to a new trial.

## CONCLUSION

¶ 21 We express no opinion on the ability of the Ledbetters to prevail in a new trial. Furthermore, this decision should not be construed to stand for the proposition that a single untrue response to a question on *voir dire* will necessarily require a new trial. Here, however, we are presented with a false answer which led to a person clothed with the mantel of leadership attempting to persuade fellow jurors to reach a defendants' verdict on extraneous prejudicial information precluded by the legislative pronouncement in *12 O.S.2011 § 2606* (B).[28]

¶ 22 The trial judge: conducted the initial *voir dire* in which the foreperson assured him that she would not allow her professional background to be substituted for the evidence presented by the witnesses; was present during the trial; observed the witnesses; and heard their testimony. After considering the motion for new trial and the juror's affidavit, the response, and the argument of counsel for all parties, he determined that the statements of the foreperson, taking on the persona of an expert witness during jury deliberations, constituted conduct materially and adversely affecting the Ledbetters' right to a fair trial. On the record presented, there has been no clear showing of manifest error and an abuse of discretion. Howard and Radiology Services simply have not met the difficult standard which must be demon-

strated to show that the trial court erred in granting a new trial. Therefore, the trial court's new trial order must be upheld. The order of the trial court is affirmed and the matter is remanded for a new trial.

¶ 23 **CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT AFFIRMED AND CAUSE REMANDED.**

TAYLOR, C.J., COLBERT, V.C.J., WATT, REIF, COMBS, JJ., concur.

GURICH, J., concurs in result.

WINCHESTER, EDMONDSON, JJ., dissent.

KAUGER, J., not participating.

GURICH, J., specially concurring in result:

¶ 1 The trial judge, in this case, after hearing arguments from both parties, granted the plaintiffs' motion for new trial, finding juror misconduct during deliberations. Because the trial judge was in the best position to evaluate the post-trial motions of the parties, I concur with the majority that the Defendants did not overcome the heavy burden of proving that the trial judge abused his discretion in granting a new trial. *Taliaferro v. Shahsavari*, 2006 OK 96, ¶ 14–15, 154 P.3d 1240, 1244–45. However, the majority does not address whether and to what extent jurors may rely upon professional or occupational expertise during deliberations and whether a juror's statements based on such expertise constitute extraneous prejudicial information. I write separately to comment on these issues.

¶ 2 Over the past thirty years, occupational exemptions from jury service have been eliminated across the country.[1] Oklahoma is no exception.[2] The only professionals exempt from jury service in Oklahoma state courts are Justices of the Supreme Court, judges of

---

**28.** Title *12 O.S.2011 § 2606* (B), see note 10, supra.

**1.** For a discussion of occupational exemptions from jury service and the recent statutory reforms abolishing most occupational exemptions, see Michael B. Mushlin, *Bound and Gagged: The Peculiar Predicament of Professional Jurors*, 25 Yale L. & Pol'y Rev. 239 (2007); *See also Jury*

*Service Reform*, American Tort Reform Association (2011), http://www.atra.org/issues/jury-service-reform.

**2.** In 2004, the Legislature amended *38 O.S. § 28* to encourage jury service by business and other professionals by reducing the time commitment and allowing professionals flexibility in rescheduling to meet the needs of their offices.

the Court of Civil Appeals, judges of the Court of Criminal Appeals, judges of the district courts, sheriffs, and "licensed attorneys engaged in the practice of law." *38 O.S.2009 § 28.* Jurors with professional or occupational expertise routinely sit on juries, and often, as in this case, they sit on cases involving an issue related to their area of expertise.

¶ 3 Parties to the litigation are responsible for questioning prospective jurors during voir dire regarding any knowledge or expertise they may have in an area relevant to the litigation. Any concerns about a juror's ability to remain fair and impartial because of his or her expertise should be resolved before the jury is seated. *See* Rule 6, *Rules for District Courts of Oklahoma,* 12 O.S. Ch. 2, App. If a juror with expertise remains on the jury, the trial court, in addition to giving Oklahoma Uniform Jury Instruction 1.4,[3] should consider giving the following instruction:

> Should you have professional or occupational expertise in an area that is relevant to this litigation, you may rely on that expertise and experience in informing your deliberations. You may share that expertise and experience with other members of the jury as it applies to the specific evidence introduced in this case. However, you may not consider extra facts or law, not introduced at trial, that are specific to parties or an issue in this case that may be based on your professional or occupational expertise.[4]

¶ 4 No error is committed when jurors with professional or occupational expertise rely on their expertise to evaluate the evidence. But when a jury verdict is challenged on such grounds, the trial court should set aside the verdict only when it is clear a juror has introduced specific facts or legal content relevant to the case from outside the record.[5]

¶ 5 Generally, affidavits, depositions, and oral testimony of jurors may not be used to impeach a jury verdict. *Oxley v. City of Tulsa,* 1989 OK 166, ¶ 25, 794 P.2d 742, 747. Section 2606(B) is an exception to this general rule. *Id.* It authorizes jurors to testify regarding allegations of misconduct:

> A juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. An affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying **shall not be received for these purposes.** 12 O.S.2001 § 2606(B) (emphasis added).

¶ 6 To set aside a verdict for juror misconduct based on the introduction of extraneous prejudicial information to the jury, the trial court must find both that extraneous information was improperly before the jury *and* that the extraneous information prejudiced the verdict.[6] *See id.* When determining whether a juror with expertise improperly introduced extraneous information to the jury, the trial court must first decide whether the "experience used by the juror in deliberations [was] part of the juror's background, gained before the juror was selected to participate in the case," or was the result of

**3.** "Do not read newspaper reports or obtain information from the internet about this trial or the issues, parties or witnesses involved in this case, and do not watch or listen to television or radio reports about it. Do not attempt to visit the scene or investigate this case on your own." Oklahoma Uniform Jury Instruction 1.4.

**4.** *See Kendrick v. Pippin,* 252 P.3d 1052, 1063 (Colo.2011).

**5.** A majority of courts, including the Tenth Circuit, have held that jurors' intradeliberational statements, when based on personal knowledge and occupational or professional experience, do not constitute extraneous prejudicial information. This approach allows jurors with professional or occupational expertise to rely on that knowledge to inform their deliberations and to communicate their opinions to fellow jurors so long as they do not bring in legal content or specific factual information learned from outside the record. Under this approach, jurors with expertise can apply their expertise to evidence already introduced at trial. *See e.g., Kendrick,* 252 P.3d 1052; *Marquez v. City of Albuquerque,* 399 F.3d 1216 (10th Cir.2005); *Meyer v. State,* 119 Nev. 554, 80 P.3d 447 (2003); *State v. Mann,* 131 N.M. 459, 39 P.3d 124 (2002); *Brooks v. Zahn,* 170 Ariz. 545, 826 P.2d 1171 (Ariz.App. 1991); *Baker v. Wal–Mart Stores, Inc.,* 727 S.W.2d 53 (Tex.App.1987).

**6.** This Court has applied the extraneous-prejudicial-information exception contained in § 2606(B) on two previous occasions. *See Oxley,* 1989 OK 166, 794 P.2d 742; *Willoughby v. City of Okla. City,* 1985 OK 64, 706 P.2d 883.

independent investigation into a matter relevant to the case. *Id.*

¶ 7 If the trial court finds that extraneous information was introduced to the jury, it must also determine that the extraneous information *prejudiced* the jury's verdict. Because section 2606(B) prohibits a juror from testifying "to the effect of anything upon the juror's mind or another juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes during deliberations," the trial court's inquiry into the element of prejudice must be an objective one. The trial court must determine whether the average hypothetical juror would be influenced by the juror misconduct. *Meyer*, 80 P.3d at 456–57. Affidavits or statements by jurors about the *actual effect* of the misconduct on the deliberations or their individual decisions are *not* admissible to determine the impact of the misconduct upon a verdict. *Id.* Rather, the trial court should consider, for example, how the material was introduced to the jury, the length of time it was discussed by the jury, the timing of its introduction, whether the information was ambiguous, vague, or specific in content, whether it was cumulative of other evidence adduced at trial, whether it involved a material or collateral issue, or whether it involved inadmissible evidence. *Id.*

¶ 8 Such an approach by trial courts protects the policy behind section 2606(B):

> [T]here are compelling interests for prohibiting testimony about what goes on in the jury room after a verdict has been rendered. *The rule protects the finality of verdicts. It protects jurors from harassment by counsel seeking to nullify a verdict. It reduces the incentive for jury tampering. It promotes free and frank jury discussions that would be chilled if threatened by the prospect of later being called to the stand. Finally, it preserves the community's trust in a system that relies on the decisions of laypeople [that]*

> *would all be undermined by a barrage of postverdict scrutiny.*

United States v. Benally, 546 F.3d 1230, 1233–34 (10th Cir.2008) (internal citations and quotations omitted).[7] Additionally, this approach recognizes the traditional role of the jury. Jurors are expected to call on their personal experiences and common sense in reaching a verdict. Oklahoma Uniform Jury Instruction 1.4 provides: "You may make deductions and reach conclusions *which reason and common sense* lead you to draw from the facts which you find to have been established by the testimony and evidence in the case." Oklahoma Uniform Jury Instruction 1.4 (emphasis added). Instruction 1.8A also instructs the jury to make its decision based on "the reasoning" each juror has. Oklahoma Uniform Jury Instruction 1.8A.

¶ 9 The line between a juror's application of his or her professional or occupational expertise to evidence in the record and a juror's introduction of legal content or specific factual information learned from outside the record is often a fine one. As such, the procedure set forth in section 2606(B) must be precisely followed, and a jury verdict set aside only when it is clear a juror with professional or occupational expertise has introduced specific facts or legal content relevant to the case from outside the record. Otherwise, all jury verdicts are subject to challenge.

WINCHESTER, J., with whom EDMONDSON, J., joins, dissenting:

¶ 1 I dissent to today's majority opinion because I do not believe that a juror's personal experiences constitute an external influence under the meaning of Section 2606(B). The majority affirms the granting of a new trial based solely on the affidavit of one of the jurors in the case alleging that the jury foreperson "shared her knowledge of the proper care and treatment of diabetic patients" in jury deliberations.[1] I do not believe that the jury's free deliberation pro-

---

7. This Court has recognized that *12 O.S.2001 § 2606* (B) is "substantially similar to the federal rule"; therefore, *Benally*'s discussion of Federal Rule of Evidence 606(B) is instructive. *Willoughby*, 1985 OK 64, ¶ 12, 706 P.2d 883, 887.

1. The jury verdict was 9–3 in favor of the defendants. Juror Baker, the affiant, apparently was not unduly influenced by the foreperson as she did not join the verdict for Defendants. Regardless, Section 2606(B) prohibits a juror from testifying as to "the effect of anything upon the juror's mind or another juror's mind or emotions

cess should be tampered with on such thin grounds. Thus, I would sustain the jury verdict and find the proposed juror affidavit inadmissible.

¶ 2 It is the court's duty to protect jury verdicts from unwarranted intrusions. Jurors may not testify to invalidate their own verdict unless extraneous prejudicial information is brought to their attention or an improper outside influence is brought to bear upon them. *12 O.S.2001 § 2606* (B). The rule that jurors may not impeach their verdict was designed to encourage free and frank discussion among jurors, promote verdict finality, protect jurors from harassment by losing parties, and preserve the viability of the jury system. *U.S. v. Benally*, 546 F.3d 1230, 1234 (10th Cir.2008). The majority opinion threatens these goals.

¶ 3 Prior to trial, the parties and their counsel were well aware of the foreperson's work experience as a home health nurse who had dealt with diabetic patients on numerous occasions. In fact, the juror was questioned about her employment in-depth on *voir dire*. She freely disclosed that she was a licensed practical nurse and she also admitted that diabetics were common among her patients. Despite this knowledge, and the ability to dismiss the juror during *voir dire*, the parties and their counsel opted to retain her as a juror and thereby waived any objections to her qualifications.

¶ 4 The majority claims that the foreperson's conduct improperly injected extraneous prejudicial information into the deliberation process. In support of this claim, the majority places heavy reliance on the fact that the foreperson stated she would not substitute her experiences for those of the testimony from the trial witnesses, going so far as to claim that the foreperson *lied* under oath during *voir dire*.[2] Notably, there is not one shred of evidence that the foreperson, or any of the other jurors, did not base her decision on the evidence presented in the case. That she may have applied personal observations, obtained from her job as a home health nurse, to the facts of this case does not present the catastrophic prejudice the majority contends it does.

¶ 5 In *Benally*, the Tenth Circuit cautioned courts to be careful "not to confuse a juror who introduces outside evidence with a juror who brings his personal experiences to bear on the matter at hand." *U.S. v. Benally*, 546 F.3d 1230, 1237 (10th Cir.2008)(citing *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1223 (10th Cir.2005)("A juror's personal experience, however, does not constitute 'extraneous prejudicial information.'"). In *Marquez v. City of Albuquerque*, 399 F.3d 1216 (10th Cir.2005), a juror's experience training police dogs was specifically relevant to the case at issue and it was learned that the juror had, in fact, discussed that experience to help the jury determine the issue before it which was whether the use of a police dog constituted excessive force. The Tenth Circuit held that the juror's comments were not extraneous, prejudicial information. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1223 (10th Cir.2005).[3]

as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes during deliberations." *12 O.S.2001 § 2606* (B).

2. "[A]llowing juror testimony through the backdoor of a voir dire challenge risks swallowing the rule. A broad question during voir dire could then justify the admission of any number of jury statements that would now be re-characterized as challenges to voir dire rather than challenges to the verdict. Given the importance that Rule 606(b) places on protecting jury deliberations from judicial review, we cannot read it to justify as large a loophole as [the defendant] requests." *United States v. Benally*, 546 F.3d 1230, 1236 (10th Cir.2008).

3. Significantly, not one of the cases cited by the majority finds that the personal or professional experience of a juror is the type of extraneous influence allowed to be exposed by the affidavits of other jurors after trial. Rather, all of the cited cases deal with actual, concrete influences such as external exhibits, independent investigations or the injection of facts outside the record of the specific case. There were no such external influences brought to bear on the instant matter. Numerous other jurisdictions have held that a juror's statements made during deliberation, when based on personal knowledge that is gained through work or otherwise and not directly related to the litigation at issue, do not constitute prejudicial, extraneous information. *See, e.g., U.S. ex rel. Owen v. McMann*, 435 F.2d 813, 817 (2nd Cir.1970)("[T]he Court has never suggested that jurors, whose duty it is to consider and discuss the factual material properly before them, become 'unsworn witnesses' within the scope of the confrontation clause simply because they have considered any factual matters going beyond those of record. To resort to the

¶6 Attacking a jury verdict with juror comments made during deliberation impermissibly leads to public exposure of what was intended to be a private discussion, exactly what § 2606(B) was designed to avoid. Internal influences on a verdict during the jury's deliberative process do not constitute outside influences and evidence thereof is inadmissible to impeach a jury's verdict. Here, there is absolutely no evidence that the foreperson brought any extraneous facts specific to the litigants or the case into the jury room or that she conducted any independent fact-finding regarding the case. Rather, the statements attributed to her came from her own work experience dealing with diabetic patients. Diabetes is, unfortunately, a common ailment that many people have either dealt with personally or who have family members or friends that have it, as indicated by several of the jurors during *voir dire*.

¶7 The necessity of democracy requires juries to have great latitude during deliberation. All jurors enter the jury system with a variety of life experiences, including their work experience. It is difficult to fathom any jury arriving at a verdict in a case without some, if not all, of the members drawing on their own experiences and asserting their individual ideas and opinions on the matters submitted to them. A juror's personal experience, be it professional or otherwise, so long as not directly related to the facts and parties in the underlying litigation, does not constitute a prejudicial, external

influence necessitating a new trial. Accordingly, I dissent.

metaphor that the moment a juror passes a fraction of an inch beyond the record evidence, he becomes 'an unsworn witness' is to ignore centuries of history and assume an answer rather than to provide the basis for one."); *Hard v. Burlington Northern Railroad Co.*, 870 F.2d 1454, 1462 (9th Cir.1989)("It is expected that jurors will bring their life experiences to bear on the facts of a case); *Bethea v. Springhill Memorial Hosp.*, 833 So.2d 1 (Ala.2002)(jurors' discussion during deliberation of their personal knowledge of or experience with induced labor, which was at heart of dispute, held not extraneous, prejudicial information); *Brooks v. Zahn*, 170 Ariz. 545, 826 P.2d 1171, 1177–1178 (Ariz.App.1991)("We expect jurors to draw upon their common sense and experience and use their knowledge to assist in reaching a verdict.... [W]e [must] distinguish between a juror's knowledge, opinions, feelings or bias and 'the type of after-acquired information that potentially taints a jury verdict.' ... [The juror's] statements are the product of her own experience and knowledge. We reject the

invitation to categorize specialized knowledge possessed by a juror and discussed during deliberations as extrinsic or extraneous information. To do so would cause endless examination into jurors' comments during deliberations to determine whether a particular juror drew upon unusual or expert knowledge to reach a verdict."); *Leavitt ex rel. Leavitt v. Magid*, 257 Neb. 440, 598 N.W.2d 722 (1999)(legal knowledge of attorney-juror on issue of proximate cause, brought into jury deliberations, was not prejudicial, extraneous information); *Baker v. Wal–Mart Stores, Inc.*, 727 S.W.2d 53, 55 (Tex.App.1987)(in negligence action to recover damages for personal injuries, jurors could not testify as to medical information supplied by another juror who was a registered nurse since the source of the information was inside the jury, not outside); *Caldararo v. Vanderbilt Univ.*, 794 S.W.2d 738 (Tenn.App.1990)(foreman's claim during deliberations that because he was married to nurse he had specialized knowledge about diabetics was not extraneous information).